STATE OF IOWA, Appellee, v. DORRANCE E. LYONS, Appellant.

**CRIMINAL LAW: Demonstrative Evidence—Identification of Firearm.**
1 Evidence held to sufficiently identify a revolver as the one which
the accused had passed into a jail, and as the one with which a
homicide was committed.

**CRIMINAL LAW: Trial—Improper Reception of Testimony—Curing**
2 **Error.** The improper reception of testimony of the declaration of a
coconspirator after the conspiracy had been consummated, is cured
by oral and written instructions to the jury to disregard the same
wholly, even though the erroneously received testimony was read
to the jury, in order that the jury might definitely know just what

was excluded from their consideration. (See Book of Anno., Vol. 1, Sec. 11493, Anno. 617 *et seq.*)

Headnote 1: 16 C. J. p. 774. Headnote 2: 17 C. J. p. 325.

*Appeal from Dubuque District Court.*—P. J. NELSON, Judge.

JANUARY 11, 1927.

The defendant was jointly with three others indicted for murder. Upon a separate trial, he was convicted of murder in the first degree, and his punishment was fixed at life imprisonment. He appeals.—*Affirmed.*

*John D. Knoll*, for appellant.

*Ben J. Gibson*, Attorney-general, and *Neill Garrett*, Assistant Attorney-general, for appellee.

VERMILION, J.—It is undisputed that appellant's codefendants, Carlson, Kardell, and Truda, and one Earl Stearns were confined in the Dubuque County jail; and on the morning of October 12, 1925, when the deceased, who was the jailer, went into the jail, he was shot and killed by Stearns, who, with Carlson and Kardell, then escaped from the jail. The appellant had been in the jail on a minor charge, and was discharged on October 8, 1925. After the killing of the jailer, he was arrested, and signed a written confession, which was introduced in evidence, in which he said, in substance, that, before he was released from the jail, it was arranged between himself, his codefendants, and Stearns that he should procure a gun and get it into the jail, and he was given $4.50 for that purpose; that, after his release, he stole a 25-caliber Colt automatic pistol, loaded it, and went to the jail in the evening, where he talked with Truda and told him that he had the gun; that he then went around into the gangway between the courthouse and the jail, and a string was hanging over the jail wall, made up of the strands taken from the jail mop, and he tied the pistol to the string. The confession contained the following:

"There was three one-dollar bills tied to the string, that I took, and I had gotten $4.50 when I left the jail. I was sup-

posed to buy the gun with this money. This plan was arranged while I was in jail, and before I was released. * * * The pistol was not loaded when I got it, but I got five bullets at the shop, and put them in the pistol, and the pistol was loaded when it was pulled into the jail, with five bullets in it.''

In addition to the written confession, there was testimony that appellant stated, after his arrest, that, when he visited Truda at the jail, Truda instructed him to go around the side, and he would find a string hanging over the wall; that he was familiar with the plot, and that Stearns was to ''stick up'' the deceased, bring him into the jail, take his gun away from him, and lock him in a cell.

The cause was tried by the State and submitted to the jury on the theory that the appellant had conspired with his codefendants and Stearns to effect a jail delivery of the others by an attack upon the jailer, with a weapon to be procured by appellant and introduced into the jail in the manner stated; and that appellant was responsible for the acts of his coconspirators in pursuance of the common design, although the injury done was greater than that intended by the conspirators, and although appellant was not present at the time of the assault on the jailer. That this is the law is not disputed by the appellant. See *State v. McCahill*, 72 Iowa 111; *State v. Munchrath*, 78 Iowa 268; *State v. Smith*, 106 Iowa 701; *State v. Pasnau*, 118 Iowa 501. He does not question the court's instructions to the jury.

I. The chief complaint is that the evidence is insufficient to sustain the verdict, and this is directed to the proposition of the identity of the pistol which the appellant tied to the string

1. CRIMINAL LAW: demonstrative evidence: identification of firearm.

hanging over the jail wall with that used by Stearns in the attack on the jailer. There was testimony that the bullet found in the wound which produced the death of the jailer was of the same caliber as the pistol which appellant tied to the string; and an inmate of the jail, who was not concerned in the conspiracy, but saw the shooting, testified that he saw the gun in Stearns's hand, and that a Colt 25-caliber automatic pistol shown him looked like the gun which Stearns had. We are clearly of the opinion that the evidence was sufficient to sustain the verdict.

II. The court, over objections, permitted the sheriff to testify to certain statements made by the alleged coconspirator,

Truda, after the killing. The appellant moved to strike this

2. CRIMINAL LAW: trial: improper reception of testimony: curing error.

testimony. The court overruled the motion, at the time, but later announced that the motion would be sustained, and directed the jury to give no consideration whatever to such testimony. Thereupon, one of the jurors asked the court to have the testimony so stricken read, saying: " * * * so that the jury will understand what you mean by having that taken out altogether." The reporter then read the testimony with respect to the conversation with Truda. At the conclusion of the reading, the appellant's counsel said:

"This testimony now having been read to the jury, we ask at this time that the jury be instructed to disregard it entirely."

The court said:

"That request will be granted. The jury is now instructed you are to disregard this testimony just read entirely. Give it no consideration when you come to consider your verdict. Treat it as though it had not been received, but let it have no weight with you in determining your verdict."

In the instructions to the jury, this testimony was referred to, the court saying that the testimony had theretofore been withdrawn from the consideration of the jury, and that they should not give any consideration to it, or draw any inferences from it, or consider it in any manner whatever.

Appellant contends that, notwithstanding that the testimony in question was thus repeatedly, unequivocally, and specifically withdrawn from the consideration of the jury, the error in its admission was not cured; and that its repetition at the request of a juror, in order that there might be no misunderstanding on the part of the jury as to what was withdrawn, but served to impress it on the minds of the jurors.

We are of the opinion that the error in the admission of the testimony was corrected by its withdrawal from the jury and the specific direction of the court, both at the time and in the instructions to the jury, that it should not be considered in any manner whatever. *State v. Moran*, 131 Iowa 645; *State v. Lounsbury*, 178 Iowa 555; *State v. Bird*, 196 Iowa 474; *State v. Fortune*, 196 Iowa 884. There have been cases where we have been constrained to say that evidence improperly admitted and subsequently excluded was of such a character, when considered

in connection with the other evidence, that the error was not thereby cured. The present case is not of that class. The statement of Truda, as testified to by the sheriff, corroborated the confession of the appellant as to the conspiracy and the latter's connection with it, and also the testimony of the other witnesses as to the shooting. True, he said that the gun which appellant procured and tied to the string was drawn into the jail and given to Stearns. But, as we have said, the evidence properly before the jury was amply sufficient to sustain the verdict at that point. We are by no means prepared to say that, because the excluded testimony was read, at the request of a juror, for the very purpose of enabling the jury to understandingly obey the court's direction, it will be presumed that they disobeyed the repeated direction that they should not consider it.

We find no reversible error, and the judgment is—*Affirmed.*

EVANS, C. J., and STEVENS, FAVILLE, and DE GRAFF, JJ., concur. ·