Atwell Junior CONNER, Appellant,

v.

STATE of Iowa, Appellee.

No. 83–1193.

Supreme Court of Iowa.

Feb. 13, 1985.

Rehearing Denied April 15, 1985.

Jon M. Kinnamon of Kinnamon, Kinnamon, Russo & Meyer, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., Mary Jane Blink, Asst. Atty. Gen., and John J. Hines, County Atty., for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

SCHULTZ, Justice.

This postconviction proceeding has been instituted by the petitioner, Atwell Junior Conner, following his conviction for murder in the first degree in violation of Iowa Code section 690.2 (1973). At trial both parties

offered a stipulated record, and petitioner additionally offered exhibits and undisputed affidavits. The trial court determined there were no material facts at issue. It found no legal basis for postconviction relief and denied the application. We affirm.

The facts surrounding the crime were detailed in *State v. Conner*, 241 N.W.2d 447 (Iowa 1976), and we shall only briefly address them. During the evening of March 9, 1974, Conner was in the company of George Nowlin when the two planned to commit a robbery. Armed with weapons, they drove through the streets of Cedar Rapids and near midnight saw a girl and boy walking on the roadway. They stopped to rob the boy, Michael Servey, and forced both into their auto. Sometime later Nowlin raped and killed the girl, Maureen Ann Connolly.

Conner's conviction was affirmed by this court on direct appeal. *Id.* Conner filed a habeas corpus petition in the United States District Court alleging that his state conviction was in violation of the United States Constitution. After the federal district court dismissed the petition, Conner appealed to the United States Court of Appeals for the Eighth Circuit. Out of the six issues litigated, the court of appeals affirmed the federal district court on four issues and vacated its ruling on two issues on the basis that Conner had failed to exhaust his state remedies. *Conner v. Auger*, 595 F.2d 407, 413 (8th Cir.), *cert. denied*, 444 U.S. 851, 100 S.Ct. 104, 62 L.Ed.2d 67 (1979).

The present application for postconviction relief was then filed, raising the two issues that the court of appeals' decision declared had not been exhausted and raising other and new grounds. On this appeal, Conner asserts: (1) that the jury instructions denied him due process, equal protection, a fair trial and trial by jury by failing to adequately present his theory that both the killing and the malice aforethought attributable to the principal who perpetrated the murder could have arisen from an underlying felony other than the underlying felony of robbery which formed the basis of petitioner's culpability, absolving petitioner of guilt under the State's felony-murder theory; (2) that the jury instructions conclusively imputed the perpetrator's malice aforethought to the petitioner without requiring a finding that his participation in an underlying robbery established the *mens rea* required for a murder conviction, thereby denying him due process; (3) that the attacked instructions erroneously omitted two elements of the crime; (4) that an underlying felony of kidnapping supplied a basis for an instruction on second degree murder and that the failure to so instruct the jury denied petitioner due process and equal protection when he was charged under an open charge of murder; (5) that the State's failure to disclose exculpatory evidence, consisting of a statement of his cellmate relating a conversation concerning the crime, denied him due process; (6) that he was denied due process and equal protection when the lesser included offense of second-degree murder was not submitted to the jury, yet the lesser included offense was submitted in other cases involving a defendant charged under an open charge of murder; and (7) that under the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the evidence was insufficient to support a verdict of guilty on a charge of first-degree murder. The State asserts *inter alia* that some of the issues stated above were either resolved on direct appeal, waived when not raised on direct appeal, or not preserved at trial for purposes of appeal. Petitioner asserts that just cause exists for failure to raise any issues not properly preserved for appeal and that the State is estopped from asserting that his first two stated issues were waived when, with regard to those issues, the State argued to a federal court that he had not exhausted state remedies.

Conner's conviction for murder in the first degree arose from Iowa's felony-murder rule, section 690.2 (1973), which provided in pertinent part: "All murder ... which is committed in the perpetration or attempt to perpetrate any ... robbery is murder in the first degree." The theory of the

State's case presented to the jury by the trial court's instructions was that Conner aided and abetted Nowlin in the felony-murder of Connolly. The jury was instructed that the underlying felony was the robbery of Servey.

I. *Theory of defense instruction.* Conner claims he was denied due process, equal protection, a fair trial and trial by jury by the trial court's refusal to give instructions that presented his theory of defense. This alleged available defense was the theory that the State had not proved Nowlin's killing of Connolly did not arise from intent unrelated to the crime of robbery. He urges that Nowlin could have killed Connolly in the perpetration of rape; if the jury so found, no malice could be implied to Conner for the killings through his participation in the robbery. The State urges that we have litigated this issue in the original appeal when we held that Conner did not request a theory of defense instruction, but simply excepted to the marshalling of the elements instruction and the instruction that the State had to prove the murder was committed "in the perpetration of robbery." *Conner,* 241 N.W.2d at 463.

In instruction 11, the trial court set out the elements of the offense, instructing the jury the State had to prove beyond a reasonable doubt that (1) Nowlin did unlawfully shoot Connolly; (2) Connolly died as a result; (3) such action of Nowlin was done with malice aforethought; and (4) such action of Nowlin was committed in perpetration of the robbery of Servey by Conner and Nowlin, in which Conner actively participated or knowingly aided and abetted Nowlin. Instruction 12 defined the fourth element as follows: "That such action of George Nowlin was committed in the perpetration of a robbery of Michael Servey only if the robbery of Michael Servey and the killing of Maureen Ann Connolly were parts of one continuous series of acts connected with each other."

After we indicated in our earlier ruling that defendant's objections to instructions 11 and 12 were not truly requested instructions but were exceptions to the proposed

instructions, we explained that the felony-murder rule in Iowa, found in section 690.2 "does not make all *killings* in perpetration of the designated felonies murder. It makes *murder* in perpetration of such felonies first-degree murder." *Conner,* 241 N.W.2d at 447 (emphasis in original).

We reviewed the objection as follows:

In excepting to this instruction, defense counsel contended the explanation was inadequate and requested the jury be told:

"You are instructed that such action of George Nowlin was committed in the perpetration of a robbery of Michael Servey only if the death of Maureen Ann Connolly occurred in the immediate perpetration, actual commission and immediate escape from the robbery of Michael Servey."

In the alternative, if this change were refused, defense counsel requested the jury be told defendant could be convicted only if Maureen's death occurred incident to the robbery of Michael "rather than arising from the formation of a separate and specific intent unrelated to the crime of robbery."

*Id.* We then held that a murder is in perpetration of a felony if it is an incident to the felony and is associated with the felony as part of an unbroken chain of events or as part of one continuous series of acts connected with each other. *Id.* at 463–64.

We addressed defendant's second or alternative exception as follows:

Defendant's second or alternative exception presents a closer question. Defendant alleges his alternative request would inform the jury of the State's obligation to prove the robbery and murder were causally and not merely sequentially related. That purpose is not entirely clear from defendant's exception and the language requested. In any event, we believe the court's instruction substantially and adequately embodied the concept urged by defendant. At least it did so as well as the language suggested by defendant.

Although the court's instruction might well have been more detailed, we do not believe it was deficient in the respects claimed by defendant. The trial court did not err in overruling his exceptions. *Id.* at 464.

In his argument before the U.S. Court of Appeals, Conner attacked instruction 12, contending "that this instruction failed to present to the jury his theory of defense, in that it allowed an implication of Conner's guilt for felony-murder on the basis of a *temporal* connection between the robbery and Nowlin's killing of Ms. Connolly, without any jury finding of a *causal* relation between those two crimes." *Auger*, 595 F.2d at 412 (emphasis in original).

■ We feel that the issues presented by Conner are somewhat clouded and confusing. This is in part due to the fact that the objections that Conner claims preserved error were in the form of exceptions to the marshalling of the elements instruction and the definition of a term rather than a request for a theory of defense instruction. A proper theory of defense instruction is one which sets forth a set of facts which would preclude a finding of guilt. *State v. Kase*, 344 N.W.2d 223, 226 (Iowa 1984). Such an instruction is neither a marshalling instruction which sets forth the elements of the crime and requires the State to prove those elements, nor an instruction which defines one of the elements set forth in the marshalling instruction. We found in *Conner* that the marshalling instruction and the definitional instruction, instructions 11 and 12, were not defective in the respects claimed by defendant. 241 N.W.2d 464.

The first problem with Conner's present contention is that of preservation of error. He did not ask for a theory of defense instruction on the grounds that he now advocates, but bootstraps his present contention by referring to his objection to the marshalling instruction and the definitional instruction. Thus, when we found that the language at issue was not requested as a theory of defense instruction, we determined that error was not preserved.

Additionally, we addressed the claim on the merits, finding that the court's instruction embodied the concept urged by defendant at least as well as defendant's proposed language. *Id.* While we believe that we have considered and rejected Conner's causality claim, we shall further discuss it.

■ We cannot agree with Conner's assertion that he was entitled to an additional instruction which would tell the jury that the State must prove a causal relationship between the robbery and the murder. There is no statutory requirement that there be a strict causal relationship between the robbery and the murder. Rather, section 690.2 requires the murder to be committed in "perpetration" of the robbery. The instruction given by the trial court encompassed the requirement of our statute.

Other jurisdictions have rejected this causal requirement. California, which has a felony-murder statute similar to section 690.2, has rejected the causal relationship requirement sought here and has held that the murder and the accompanying felony must be part of one continuous transaction. *People v. Mason*, 54 Cal.2d 164, 4 Cal.Rptr. 841, 843–44, 351 P.2d 1025, 1027–28 (1960); *People v. Chavez*, 37 Cal.2d 656, 234 P.2d 632, 640–41 (1951). In *Chavez*, in which a defendant unsuccessfully requested instructions that the killing must have been a part of the felony "in an actual and material sense, and have resulted as a natural and probable consequence thereof," the supreme court held that failure to grant these requested instructions did not constitute error and stated:

In his argument, Chavez erroneously assumes that to bring a homicide within the terms of section 189 of the Penal Code, the killing must have occurred "while committing", "while engaged in", or "in pursuance" of the named felonies, and that the killing must have been "a part of" the felony or attempted felony "in an actual and material sense, and have resulted as a natural and probable consequence thereof". The law of this state has never required proof of a strict

causal relationship between the felony and the homicide. The statute was adopted for the protection of the community and its residents, not for the benefit of the lawbreaker, and this court has viewed it as obviating the necessity for, rather than requiring, any technical inquiry concerning whether there has been a completion, abandonment, or desistance of the felony before the homicide was completed.

37 Cal.2d at 669–70, 234 P.2d at 640. The Nebraska Supreme Court also has held that the commission of the felony does not necessarily need to be the cause of the death and has rejected an argument that the instructions should require a causal relationship between the accompanying felony and the death, reasoning that the act need not necessarily cause the death, but only need be in the res gestae of the perpetration of the felony. *Garcia v. State*, 159 Neb. 571, 581–82, 68 N.W.2d 151, 160 (1955).

Conner may have been entitled to such an instruction if Nowlin had withdrawn from the original plan of robbery and had struck out on a venture of his own. Conner's own testimony is to the contrary. He testified that, in the furtherance of the robbery, Servey and the victim were ordered into the car at gunpoint and the robbery occurred in the car. They drove to the spot where the victim was killed while Servey still was being held at gunpoint. Then Servey was taken to another location where he was killed; this ended the common scheme of robbery. Conner's own testimony shows that the chain of events which commenced with the robbery of Servey did not terminate until sometime after the killing of Connolly.

II. *Elements.* In this division, we shall discuss Conner's issues 2, 3 and 7 because they are similar. These claims are all based on his contention that the State was required to specifically prove (1) his personal malice aforethought and (2) his participation in the murder. A related claim was presented to the federal court of appeals in *Auger:* the trial court's application of the

felony-murder rule violated Conner's due process rights by attributing malice aforethought to him without a jury finding that he in fact possessed such *mens rea.* 595 F.2d 412–13. Conner's various claims have been restated in a number of interrelated but different contentions, and we will attempt to summarize them. We have considered all of the claims made and reject them.

■ Initially, we have a question of preservation of error. Conner's claims are based on a contention that section 690.1 requires the State to prove in a murder case that the killing took place and was done with malice aforethought. Instruction 11 only required proof that Nowlin killed with malice aforethought and only required Conner's participation in the robbery. Conner asserts the instruction incorrectly substitutes and attributes Nowlin's action and malice aforethought to Conner on a finding that Conner aided and abetted the robbery. Conner did not raise this objection in the trial court when exceptions were taken to the instruction. He claims he preserved error by referring to his motion for a directed verdict at the close of the State's evidence which was renewed at the end of the evidence. We find this contention is incorrect. The motion for a directed verdict referred to the open charge of murder, requesting that murder in the first degree be removed as an issue on grounds that the indictment was faulty for not specifically alleging the killing was deliberate, willful or premeditated and failing to refer to a specific felony. In the portion of the motion directed at murder in the second degree, he pointed out the insufficiency of the evidence that Conner killed with malice aforethought or that he aided and abetted in second degree murder, but made no claim that Conner could not be held responsible for Nowlin's action due to Conner's participation in the robbery. The trial court never had the benefit of Conner's present arguments and contentions. Consequently, any claim of error based on objections to the instructions or on a fail-

ure to instruct pursuant to a request is without merit; error was not preserved.

Nevertheless, Conner maintains that when the court attempts to give an instruction marshalling the elements of a crime, the court has a duty to set out all the elements constituting the crime charged and that a failure to do so is reversible error. Conner claims that for an individual to be found guilty of murder, even as an accomplice, he must be found to personally have participated in the killing with malice aforethought. Thus, the jury must be allowed to decide whether Conner participated in the killing with malice aforethought and, if so, whether the murder was committed in the perpetration of the felony, robbery. In essence, he asserts the trial court must instruct that it is necessary to find that Conner aided and abetted in the killing of Connolly and did so with malice aforethought. Although we generally approved the marshalling instruction in *Conner*, 241 N.W.2d at 464, we did not discuss the specific issue now presented. We hold the instruction is adequate.

For a felony-murder conviction, the State must prove defendant was participating in the underlying felony. *State v. Phams*, 342 N.W.2d 792, 795 (Iowa 1983). Because Conner participated in the underlying felony, he is vicariously liable for the acts of the principal. In an early case involving joint criminal conduct, this court held that an individual involved in the unlawful enterprise of burglary is responsible as a principal for murder committed during the perpetration of the burglary. *State v. Nash*, 7 Iowa 346, 385 (1858). We held in *State v. Cuevas*, 281 N.W.2d 627 (Iowa 1979), that there was sufficient evidence to convict the defendant of the crime of first-degree murder when the defendant drove the car with prior knowledge of the planned burglary and a killing resulted at the scene of the burglary while she sat in the automobile. *Id.* at 631–32. Similarly, we have held that when two or more people combine to accomplish an unlawful purpose, each is responsible for the acts of the other that arise out of the consequences of carrying out the original crime, even though the particular crime committed was not a part of that original design and the injury done was greater than intended by the conspirator. *State v. Kneedy*, 232 Iowa 21, 30, 3 N.W.2d 611, 616 (1942); *State v. Lyons*, 202 Iowa 1195, 1197, 211 N.W. 702, 703 (1927).

Defendant's claim that the felony-murder statute requires he must be proved to have had the *mens rea* of malice aforethought requires a contorted interpretation of the statute. Under his theory, it would be a rare occasion when a person who has aided and abetted a felony would be convicted of felony-murder. The fact that killing was not within the actual contemplation and intention of one of the parties to the robbery does not relieve such person of the responsibility as long as the other party to the robbery had the necessary *mens rea* and the act was a consequence of carrying out the unlawful common design.

Conner further claims that conclusively attributing malice aforethought to him in relation to the killing, merely from his participation in the underlying felony, is in violation of the due process clause found in the fourteenth amendment to the United States Constitution. We agree with his contention that the due process clause of the fourteenth amendment protects a defendant in a criminal case against a conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). Conner then argues that his guilt and culpability must be established from his conduct and intent, not that of Nowlin. He urges that to find that aiding and abetting another person in a robbery is tantamount to aiding and abetting that same person in a murder creates a presumption which testimony cannot overcome, effectively eliminating the specific intent of malice aforethought and aiding and abetting in a killing as elements of the offense of murder in Iowa.

In support of his theory, Conner relies upon cases which hold that due process

requires the State to prove all elements of a criminal act and that the State may not avoid this requirement by an instruction that a person intends the ordinary, natural, or necessary consequences of his actions since this may be interpreted as a conclusive presumption which would conflict with the overriding presumption of innocence. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *see also Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983). Conner's reliance on case law holding that due process requires conclusive presumptions may not be substituted for proof of the element of specific intent is misplaced. The fourteenth amendment protects a criminal defendant from the loss of his liberty without a meaningful opportunity to defend himself. In *Sandstrom* and *Johnson* the Supreme Court applied due process principles in criminal cases to invalidate an instruction which provided a conclusive presumption on the issue of specific intent on the basis that it was the functional equivalent of a directed verdict which conflicted with the constitutional presumption of innocence. *Sandstrom*, 442 U.S. at 523, 99 S.Ct. 2450, 61 L.Ed.2d 39; *Johnson*, 460 U.S. at 85, 103 S.Ct. at 976–77, 74 L.Ed.2d at 833.

■ The presumption that a person intended the consequences of his actions, which merely arises from proof that the act occurred, differs substantially from the vicarious liability illustrated in the instruction in this case. Here, the criminal responsibility of another person is imputed to the accessory because of the accessory's participation, directly or indirectly, in the commission of a crime, robbery. Robbery requires force, here use of a gun, and a foreseeable result of robbery is that someone may be killed. For such a killing to be considered murder, we do not require an intent to kill, but we do require malice aforethought which may be implied from the surrounding circumstances, such as the commission of the felony from which the death results. *State v. Veverka*, 271 N.W.2d 744, 747 (Iowa 1978).

■ We have long held, and it is the general law of this nation, that an accessory is responsible for everything done by the principal that is incidental to carrying out the illegal act—even though the injury was greater than planned. *Lyons*, 202 Iowa at 1197, 211 N.W.2d at 702–03. Our law, which holds an accessory responsible for joint criminal conduct, does not violate the accomplice's due process right. Accomplice liability is not akin to the evidentiary or procedural presumptions that are condemned in *Sandstrom;* rather, it is a matter of substantive law that places responsibility on a wrongdoer for the direct and indirect consequences of his joint criminal conduct with another. The State, through the enactment of laws, has a right to prescribe the nature of the acts that constitute criminal conduct.

Conner also urges that we again review the sufficiency of the evidence on the two elements of the crime which he claimed were omitted. The Supreme Court set forth a new standard of review for sufficiency of evidence claims in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In view of our determination that Conner's claim that the trial court omitted two necessary elements in the instruction was without merit, we find it unnecessary to readdress the sufficiency of the evidence.

III. *Included offense.* In *Conner*, we held that the trial court's refusal to submit the included offense of murder in the second degree was not error. We reasoned that, under the evidence, defendant only could be found guilty of first-degree murder or acquitted, and we indicated that he had failed to preserve error by failing to object to the lack of a second-degree instruction. 241 N.W.2d at 461. In his subsequent application for postconviction relief, Conner again raises the issue of failure to submit second-degree murder to the jury as an included offense and now claims he was denied equal protection and due process. The district court, in its postconviction ruling, rejected Conner's claims.

We have some difficulty understanding the questions presented by Conner in is-

sues 4 and 6. The arguments are not stated with clarity, nor do we find them concise and to the point. We understand the claim to be that, despite the fact that Conner did not directly object to the proposed instructions, the failure to instruct concerning murder in the second degree was error because due process required the instruction. Since this question was adversely decided in the original appeal, Conner now asserts this constitutes grounds for appeal. He claims that our appellate decisions in *Nowlin* and *Conner* differ on whether second-degree murder is a lesser included offense in this particular crime. In *Nowlin,* subsequently tried and appealed, we found there was a forcible abduction of Servey and Connolly which preceded the robbery. *Nowlin,* 244 N.W.2d 591 at 598. Because kidnapping is not a felony within the felony-murder rule, section 690.2, but could be used as a basis for a finding of murder in the second degree, Conner maintains that Nowlin and other defendants charged with an open charge of murder have been allowed to have the factfinder determine the degree of culpability under the open charge. Therefore, the trial court's failure to instruct on second-degree murder amounted to disparate treatment. We agree with the trial court's rejection of this claim.

■■■ Initially, we hold that Conner did not preserve error on this claim. There was ample evidence in the record in Conner's original trial that there was an abduction of Servey and Connolly. Consequently, a ruling in *Nowlin* did not make this claim available for the first time. In his original trial, Conner did not claim the court had erred on this ground. Issues not presented in the trial court may not ordinarily be raised for the first time on appeal. *State v. Veverka,* 271 N.W.2d at 749.

■■■ Additionally, even if this issue was not adjudicated in the original appeal, we are unconvinced that Conner could not have presented the issue during his original appeal. As indicated, evidence of an abduction or kidnapping was presented at the original trial. A postconviction applicant must provide sufficient reasons for failure to raise and cause adjudication of his claim

under direct appeal. *Fryer v. State,* 325 N.W.2d 400, 404 (Iowa 1982).

■■■ We also agree with the State's argument that, even assuming the issue presented had not been fully litigated and had been properly preserved for review in this postconviction proceeding, Conner has not been denied either due process or equal protection by the court's failure to instruct on murder in the second degree as an included offense. The case was submitted to the jury on only one theory of guilt, felony-murder. The evidence did not justify the submission of an included offense. *Conner,* 241 N.W.2d at 461. There is no obligation to instruct on a lesser included offense when there is no evidence that the offense committed was less than charged. *State v. Morgan,* 322 N.W.2d 68, 70 (Iowa 1982).

■■■ We find no basis for a claim that Conner should have been provided an alternate theory of liability. Apparently, he asserts that during his trial liability was submitted on additional theories. Conner moved for a directed verdict at the end of the State's and defendant's case on the basis there was insufficient evidence to submit the case to the jury on a theory of second-degree murder, yet now he claims that another theory of murder should have been presented for jury determination entitling him to an instruction on the included offense of second-degree murder. Without deciding whether Conner could have asked for an additional theory of liability, we find he did not preserve error by requesting submission of an additional theory.

In summary, we hold that the trial court correctly rejected Conner's due process and equal protection claims.

*IV. Exculpatory evidence.* At the close of the evidence in the original criminal trial, the trial court sustained Conner's motion to produce any evidence which reasonably could be construed to be favorable to the defendant. Conner now claims that the failure on the part of the State to provide the signed statement of Craig Sudduth requires defendant's conviction be vacated. Sudduth, who shared a cell block with Nowlin, was listed on the minutes of

the grand jury testimony as a witness for the State, although he was not called as a witness at trial. Conner's attorneys interviewed prisoners, including Sudduth, about information Nowlin had related to these individuals; however, Sudduth did not disclose that he had given a signed statement to the law officers. Sudduth's statement alleged that Nowlin told Sudduth he had killed the boy and girl, "that Atwell Conner was just along at the time," and "after he killed one of the two victims he pointed the gun at Conner and said that he was going to kill him too."

■ Conner contends that if the State had produced the signed statement of Sudduth, prior to the commencement of defendant's case, defendant would have had an opportunity to utilize this witness and his signed statement. He maintains that due process was violated by the suppression of this exculpatory evidence. Since Conner has alleged constitutional fair-trial violations, we review the record de novo under the totality of the circumstances. *Kellogg v. State*, 288 N.W.2d 561, 563 (Iowa 1980).

■ The parties do not dispute that the issue of suppression of exculpatory evidence is governed by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The prosecution's suppression of evidence favorable to an accused following a request to produce violates due process when the evidence is material either to guilt or to punishment. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218. Conner attempts to bring his case within the third of three situations discussed in *Agurs:* when there has been a general request for exculpatory evidence. *Agurs*, 427 U.S. at 106–07, 96 S.Ct. at 2398, 49 L.Ed.2d at 351–52.

The principles we adhere to concerning when suppression of alleged exculpatory evidence by the State warrants a new trial were defined in *Agurs*. The Court stated as follows:

> [I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

427 U.S. at 112–13, 96 S.Ct. at 2402, 49 L.Ed.2d at 355. *See also State v. Bass*, 349 N.W.2d 498, 504 (Iowa 1984); *Fryer v. State*, 325 N.W.2d 400, 407 (Iowa 1982); *State v. Beeman*, 315 N.W.2d 770, 777–78 (Iowa 1982).

■ Our review of the evidence causes us to find that Sudduth's statement cannot satisfy the standard of materiality. Initially, the State never contended that Conner participated in Nowlin's murder of Connolly; his liability for murder was predicated upon his participation or his aiding and abetting in the robbery. The statements are cumulative to Nowlin's statements to a witness, Steve Martin. Martin testified that Nowlin took responsibility for the killing.

■ Additionally, at the time this case was tried, Sudduth would not have been permitted to testify concerning Nowlin's statements over a hearsay objection:

> The extrajudicial declarations of a person other than accused, confessing or tending to show that he committed the crime, are generally held not to be competent for accused, for, although the latter may exculpate himself by proving, if he can, that someone with whom he was not connected committed the crime with which he is charged, he cannot do so by hearsay.

22A C.J.S. *Criminal Law* § 749 (1961); *see State v. Huckins*, 212 Iowa 283, 288, 234 N.W. 554, 557–58 (1931); E. Cleary, *McCormick on Evidence* § 278 (3d ed.1984).

■ Conner cites *State v. Burt*, 249 N.W.2d 651 (Iowa 1977), and *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), as authority for the

admissibility of Nowlin's statements as an omission against penal interest. Admissions against penal interest are admissible against the declarant as indicated in *Burt,* 249 N.W.2d at 652. However, Nowlin's admissions when they are sought to be used against Conner are hearsay. The totality of the facts here is unlike that in *Chambers,* in which the statements at issue not only were critical to the defendant's defense, but were more persuasive assurances of trustworthiness. Under the totality of the circumstances involved in this case, the hearsay statements are cumulative to other evidence available, adding nothing new to Conner's defense.

In summary, we find that, based on the totality of the circumstances, Conner was not denied a fair trial because the Sudduth statement was not available to him. The Sudduth statement does not create a reasonable doubt of defendant's guilt. Therefore, it does not meet the materiality standard of *Agurs.*

AFFIRMED.