**STATE of Iowa, Plaintiff-Appellee,**

v.

**Christine Marie LOCKHEART, Defendant-Appellant.**

**No. 85–869.**

Court of Appeals of Iowa.

May 28, 1987.

---

Charles L. Harrington, Appellate Defender, and John P. Messina, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., and William E. Davis, Scott Co. Atty., for plaintiff-appellee.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Presiding Judge.

The defendant, Christine Marie Lockheart, appeals from her convictions, following a jury trial, for first-degree murder and first-degree robbery. Lockheart contends the evidence was insufficient to prove that she had aided and abetted her boyfriend in the murder. Lockheart challenges several jury instructions, the admission of evidence that she had committed another theft a few hours after the crimes charged here, and the court's failure to have her present before responding to a communication from the jury. Lockheart finally contends that her trial counsel was ineffective by failing to preserve one of her challenges to the instructions. We affirm.

Lockheart, who was seventeen years old at the time of the alleged murder, was accused with her boyfriend, Rick Nebinger, in the robbery and murder of an elderly man. The juvenile court waived its jurisdiction, and Lockheart was tried as an adult. A jury found her guilty of first-degree murder and first-degree robbery, and she has appealed from the resulting convictions.

Lockheart contends the evidence was insufficient to prove beyond a reasonable doubt that she had aided and abetted her boyfriend in the murder. Lockheart argues that the State produced no evidence whatsoever that she rather than Nebinger stabbed the victim. Lockheart further argues that the marshalling instruction permitted a theory of aiding and abetting but did not permit a theory of joint criminal conduct and that the evidence was not sufficient to prove aiding and abetting but did not demonstrate a "mutuality of intent or knowledge."

Lockheart additionally argues that the instructions were erroneous because they did not require the jury to find that the defendant personally possessed malice aforethought. Though she concedes that this issue was not raised at trial, Lockheart argues that trial counsel was ineffective by not raising and preserving this issue.

Lockheart also contends that the trial court erred by giving the jury a flight instruction, telling the jury that if it found that Lockheart had fled from the scene of the crime, it could consider the circumstances in determining guilt or innocence. Lockheart argues that the evidence showed no actual flight, but only discussions about leaving town.

Lockheart next contends that the trial court abused its discretion by admitting evidence that several hours after the murder she stole a wallet while using the neighbor's telephone. Lockheart argues that this evidence was admitted solely to show bad character and did not fall within the grounds for admitting evidence of other crimes under Iowa Rule of Evidence 404(b). The State argues that the evidence

was admissible for the limited purpose of completing the story of Lockheart's actions shortly after the crime. The State further asserts that the defendant's rights were protected by the trial court's cautionary instruction telling the jury to consider the evidence only for this limited purpose.

Lockheart lastly argues that her constitutional and statutory right to be present at all stages of trial was violated by the trial court's handling of a communication from the jury. During deliberations, the jury sent a list of questions to the judge. Following a discussion with both sides' counsel, the judge decided to respond that he could not answer the question. Lockheart contends that she should have been personally present when the matter was discussed.

Our scope of review is for the correction of errors at law. Iowa R.App.P. 4. In reviewing a sufficiency of the evidence claim, we view the evidence in a light most favorable to the State. *State v. McFadden*, 320 N.W.2d 608, 614 (Iowa 1982). All the evidence is considered, including all legitimate inferences and presumptions which may reasonably and fairly be deduced therefrom and merely the evidence that supports the verdict. *State v. Blair*, 347 N.W.2d 416, 419 (Iowa 1984); *State v. Robinson*, 288 N.W.2d 337, 339 (Iowa 1980). We are bound to uphold a jury verdict unless we find the record lacks substantial evidence to support the charge. *Blair*, 347 N.W.2d at 419. Evidence is substantial when it would "convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt." *Id.*

## I.

We first address Lockheart's contention that there was insufficient evidence to support the jury's verdict. Lockheart bases her argument upon the distinction between the aiding and abetting provisions of Iowa Code section 703.1 (1983) and the section defining joint criminal conduct, Iowa Code section 703.2 (1983). Section 703.1, defining aiding and abetting, relates to crimes which the defendant himself participated in

some degree, while section 703.2, defining joint criminal conduct, relates to additional other crimes committed by defendant's accomplice without the defendant's personal participation. *State v. Irvin*, 334 N.W.2d 312, 315 (Iowa App.1983), *citing* K. Dunahoo, *The New Iowa Criminal Code*, 29 Drake L.Rev. 237, 287 (1979–80). Lockheart contends that pursuant to this distinction, when the State charges a person with felony-murder based upon a theory of aiding and abetting rather than joint criminal conduct, the State is required to prove that the person not only participated in or aided and abetted in the underlying felony, but also that the person participated in or aided and abetted the actual killing. From this, Lockheart argues that because the marshalling instruction did not include the theory of joint criminal conduct the State was limited to proof that Lockheart actually aided the killing. Lockheart does apparently concede that there may have been sufficient evidence to support the verdict on the theory of joint criminal conduct.

Under Iowa law, a trial court is not required to word jury instructions in any particular way. *State v. Morrison*, 368 N.W.2d 173, 175 (Iowa 1985). If an instruction correctly states the applicable law, it will be deemed proper even though an alternative wording is possible. *Id.* A jury instruction will also be deemed sufficient if it states the law so that a jury composed of nonlawyers could understand it. *Jones v. Blair*, 387 N.W.2d 349, 354 (Iowa 1986). When reviewing the trial court's instructions, we must view them as a whole and not on a piecemeal basis. *State v. Sauls*, 356 N.W.2d 516, 520 (Iowa 1984).

Instruction No. 20, of which Lockheart primarily complains, states:

*Instruction No. 20:* Before the defendant can be found guilty of the crime of Murder in the First Degree as charged in Count I of the Trial Information, there must be established by evidence beyond a reasonable doubt each of the following elements:

1) That on or about the 17th day of February 1985, the defendant stabbed Floyd Brown;

or

That another stabbed Floyd Brown and that this defendant did aid and abet another in such stabbing.

2) That Floyd Brown died as a result of being stabbed.

3) That such action of this defendant or of another was done with malice aforethought and willfully, deliberately and premeditatedly and with the specific intent to kill Floyd Brown;

or

That such stabbing of Floyd Brown was done by this defendant with malice aforethought while participating in the forcible felony robbery;

or

That such stabbing was done with malice aforethought by another, while participating in the forcible felony robbery and that this defendant did aid and abet the other in participating in the forcible felony robbery.

Instruction No. 22 provides:

*Instruction No. 22:* The law provides that when two or more persons, acting in concert, knowingly participate in a forcible felony, each is responsible for the acts of the other done in furtherance of the commission of the offense or escape therefrom, and defendant's guilt will be the same as that of the person acting, unless the act was one which the person could not reasonably expect to be done in the furtherance of the commission of the offense.

Instruction No. 24 also provides:

*Instruction No. 24:* You are instructed that the law provides that all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or knowingly aid and abet its commission, shall be charged, tried and punished as principals.

The term "aid and abetting" refers to the conduct of persons in the commission of a public offense and means to knowingly assent to an act or to lend countenance or approval either by active participation in it or by some manner knowingly advising or encouraging the act prior to or at the time of its commission. Subsequent conduct may be considered only as it may tend to prove a defendant's prior encouragement or participation. A defendant's mere proximity to or presence at the scene or knowledge of the crime, without more, is not sufficient to constitute aiding and abetting.

The guilt of a person who knowingly aids and abets the commission of an offense must be determined solely upon the facts which show the part he had in it and does not depend upon the degree of another person's guilt.

If you find the State has proven beyond a reasonable doubt that the defendant did herself commit the act, or did knowingly aid and abet some person or persons in the commission of the offense charged, then the defendant is guilty of the offense charged in the same manner as if she herself had committed it and it will be your duty to find the defendant guilty; but if you fail to so find, then it will be your duty to acquit the defendant. You are further instructed that the offense charged requires specific intent as that has been defined in Instruction No. 25. In this regard before you can find the defendant aided and abetted in the commission of the offense charged, you must not only find that the defendant aided and abetted, as that has been explained, but it must also be proved by the State by evidence beyond a reasonable doubt that the defendant either possessed such specific intent herself or aided and abetted with the knowledge that the principal possessed such specific intent. If the defendant did not herself have the specific intent or have knowledge that the principal had such specific intent required for the offense charged, she is not guilty.

■ Reading these jury instructions as a whole, we believe the trial court correctly

instructed the jury on the theory of felony-murder. The record clearly reveals that the trial court intended to instruct the jury on the alternative of joint criminal conduct, as shown by the trial court's submission of Instruction No. 22. The State contends, and we agree, that the marshalling instruction submitted to the jury presented four alternatives for finding Lockheart guilty of first-degree murder: (1) the jury could have found that the defendant Lockheart herself stabbed the victim willfully and deliberately with malice aforethought and premeditation; (2) the jury could have found that Lockheart aided and abetted another in the willful and premeditated stabbing of the victim; (3) the jury could have found that Lockheart stabbed the victim with malice aforethought while participating in the forcible felony robbery; or (4) the jury could have found that another stabbed the defendant while participating in the forcible felony robbery and that Lockheart aided and abetted the other in the robbery.

■ Though the jury instructions may have been more artfully drawn, we believe the jury was adequately apprised of the felony-murder rule when viewing the instructions as a whole. By focusing solely on element one of Instruction No. 20, Lockheart overlooks the entire picture. During trial, the court explained, and Lockheart's trial counsel agreed, that element one of Instruction No. 20 established that "in order for there to be a murder, somebody has to have been killed." Since Lockheart concedes that a jury question would have been engendered had the felony-murder charge been brought pursuant to joint criminal conduct theory, thereby implicitly admitting the jury could have found Lockheart guilty of the crimes charged, we need not address the issue of whether there was substantial evidence to support Lockheart's conviction based on joint criminal conduct, for even assuming the instructions were limited to the aiding and abetting theory, we find substantial evidence to support Lockheart's conviction on the theory of aiding and abetting.

■ In order to support a conviction based on the theory of aiding and abetting, "the record must contain substantial evidence to show that the accused assented to or lent countenance and approval to the criminal act either by active participation in it or in some manner encouraging it prior to or at the time of its commission." *State v. Miles*, 346 N.W.2d 517, 520 (Iowa 1984). Though mere presence of an accused at the scene of the crime does not of itself prove that he or she aided and abetted its commission, aiding and abetting need not be shown by direct proof, but may be inferred from circumstantial evidence, including presence, companionship, and conduct before or after the offense is committed. *Fryer v. State*, 325 N.W.2d 400, 406 (Iowa 1982). While the guilt of the person accused of aiding and abetting must be determined by the facts showing the part that person played in the alleged offense and the degree of another's guilt, "when intent is an element of the crime charged, a person may be convicted on a theory of aiding and abetting if he participates either with the requisite intent himself or with knowledge that the principal possesses the required intent." *State v. Lott*, 255 N.W.2d 105, 109 (Iowa 1977).

Turning to the record, evidence offered at trial revealed that the victim's body was found in the bedroom of his home on February 17, 1985. The seventy-nine-year-old victim's wrist, knees, and ankles had been tightly bound with masking tape. The victim had been repeatedly stabbed with a butcher knife, the knife found embedded in the victim's throat. Lockheart's thumbprints were found on the telephone in the kitchen. Footprints matching shoes owned by codefendant Nebinger were found in the victim's bedroom.

The victim's relatives testified at trial that Lockheart had been a close friend of the victim's granddaughter, Renee Brown. Lockheart had lived with Renee's family intermittently for many years, and Lockheart met the victim through the Brown family. The record reveals that in the spring of 1984, Lockheart cleaned house for the victim. Renee testified that Lockheart had heard the family talk about the

victim's wealth and the fact that the victim kept sums of cash in his home.

From testimony of numerous witnesses, including members of codefendant Nebinger's family and other friends who saw Lockheart and Nebinger on the morning after the alleged murder, it appeared that Lockheart and Nebinger had devised and set into motion a plan to rob the victim. Debbie Nebinger testified that Lockheart had told her that she had gotten into the victim's home by going to the door, pretending that she and Rick Nebinger had been fighting, and asking to use the phone. Lisa Crafton similarly testified, but also stated Lockheart had told her that she had gone back outside to wait for Nebinger after he had gone inside the home.

Though Lockheart stated that she merely used the phone and then left the house, other evidence tends to show that Lockheart was more actively involved. Several witnesses testified that Lockheart was extremely concerned about her fingerprints being found in the victim's bathroom and on the tape which was used to bind the victim. From this the jury could have inferred that Lockheart assisted in binding the victim. The record reveals that the victim had been bound so tightly that circulation to his hands had been cut off and defensive wounds were found on his wrists. Both Debbie and Doris Nebinger testified that Lockheart stated several times that there was blood on everything. The evidence also reveals that Lockheart and Debbie Nebinger together burned the gloves that Rick Nebinger had worn during the course of the robbery and murder.

Dallas Mathis testified that Rick Nebinger told him that the victim had recognized Lockheart and had stated to her that "I know her, I know Chris" and "I know you won't get away with it." Scott Beck testified that Rick Nebinger had told him that the victim had recognized Lockheart and that he was going to turn them in to the police. Doris Nebinger testified that Lockheart had stated to her that the victim kept saying to Lockheart, "I know you, Chris, you're going to jail for armed robbery." From this the jury could infer that

Lockheart was inside the victim's home at the time of the alleged crimes and not outside waiting. The record also reveals that Lockheart assisted in telephoning hotels and called her father to see whether she could borrow some money so that she and Nebinger could leave town.

From the foregoing facts, we believe a rational trier of fact could reasonably conclude beyond a reasonable doubt that Rick Nebinger and Lockheart devised a plan to rob the victim, that Lockheart not only assisted in the robbery but also assisted in binding the victim, and that Lockheart willingly assisted Nebinger with knowledge of his intent to murder the victim. Though there was no direct evidence that Lockheart actually stabbed the victim, there was considerable circumstantial evidence that Lockheart aided and abetted Nebinger with knowledge of his intent to murder the victim and therefore substantial evidence existed to support Lockheart's conviction under the aiding and abetting theory. *See State v. Doss*, 355 N.W.2d 874, 876–78 (Iowa 1984) (evidence was sufficient to support a first-degree murder conviction where the defendant arguably had knowledge of the plan to murder the victim, was present at the scene, and assented to the murder by either participating in it or encouraging it); *State v. Allen*, 348 N.W.2d 243, 247 (Iowa 1984) (where the Iowa Supreme Court, in upholding first-degree murder conviction for felony-murder, stated that even if the defendant did not have the intention to murder the victim during the robbery attempt, it was the intention of the codefendant and the defendant was aware of that intention); *State v. Galvan*, 297 N.W.2d 344, 348–49 (Iowa 1980) (where the Iowa Supreme Court held that defendant's providing transportation, assisting in cleaning blood stains, and securing clothing was sufficient to support a first-degree murder conviction grounded on the aiding and abetting theory).

## II.

We next address Lockheart's contention that her trial counsel was ineffective because he did not object to the omission of

personal malice aforethought as an element of the felony-murder alternative of the first-degree marshalling instruction. Lockheart argues that even though a fact-finder may infer malice from participating in an underlying felony that results in a death, such inference is not mandatory, and the jury must be given an opportunity to reject it.

■ Because Lockheart is asserting that her constitutional right to a fair trial was violated, we make an independent evaluation of the totality of the relevant circumstances. *Taylor v. State,* 352 N.W.2d 683, 684 (Iowa 1984). The person claiming ineffective assistance must show that (1) counsel failed to perform an essential duty, and (2) prejudice resulted therefrom. *State v. Miles,* 344 N.W.2d 231, 233–34 (Iowa 1984). The claimant must prove both elements by a preponderance of the evidence. *Sallis v. Rhoades,* 325 N.W.2d 121, 122 (Iowa 1982).

■ When considering whether trial counsel's performance was deficient, we require more than a showing that trial strategy backfired or that another attorney would have tried the case differently. *Fryer v. State,* 325 N.W.2d 400, 413–15 (Iowa 1982). The claimant must overcome a presumption that counsel is competent. *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674, 693–94 (1984). The ultimate test is whether under the entire record and totality of the circumstances counsel's performance was within the range of normal competency. *Henderson v. Scurr,* 313 N.W.2d 522, 524 (Iowa 1981).

In deciding the second component of an ineffective assistance claim, we require the claimant to show that counsel's failure to perform an essential duty worked to the client's actual and substantial disadvantage, thereby constituting "a denial of the accused's due process right to a fair trial, a fundamental miscarriage of justice, or an equivalent constitutional deprivation." *Miles,* 344 N.W.2d at 234. In *Strickland,* the United States Supreme Court articulated the following standard: a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

In *Conner v. State,* 362 N.W.2d 449, 455 (Iowa 1984), the Iowa Supreme Court expressly rejected a claim that the felony-murder statute requires the State to prove that the defendant had the *mens rea* of malice aforethought. The *Conner* court held that "it would be a rare occasion when a person who has aided and abetted a felony would be convicted of felony-murder" if such a theory was the rule of law. 362 N.W.2d at 455. The court went on to state that "[t]he fact that killing was not within the actual contemplation and intention of one of the parties to the robbery does not relieve such person of the responsibility as long as the other party to the robbery had the necessary. *mens rea* and the act was a consequence of carrying out the unlawful common design." *Id.* The court also opined that "[t]he criminal responsibility of another person is imputed to the accessory because of the accessory participation, directly or indirectly, in the commission of a crime, robbery. Robbery requires force ... and a foreseeable result of robbery is that someone might be killed." *Id.* at 456.

■ In the present case, Instruction No. 24 instructed the jury that, in order to convict Lockheart as an aider and abettor, the State had to prove beyond a reasonable doubt that Lockheart either possessed the required intent herself or that she aided and abetted Nebinger with the knowledge that he possessed such intent. This instruction was a proper statement of the law. *See Lott,* 255 N.W.2d at 109 (when intent is an element of the crime charged, a person may be convicted either with the requisite intent himself or with knowledge that the principal possesses the required intent.) Thus, while the malice element was not mandatory as to Nebinger, once the jury determined that Nebinger acted with the requisite malice aforethought, this inference of responsibility is mandatory and imputed to Lockheart. From this analysis, we therefore conclude that trial counsel was not ineffective for failing to object to the proposed instruction, nor do

we find that Lockheart suffered an actual disadvantage or prejudice thereby.

### III.

Lockheart next contends that the trial court erred in submitting a flight instruction to the jury. Lockheart argues that there was no evidentiary foundation for its submission. We disagree.

Under Iowa law, "there is no constitutional requirement that the act of flight be found by proof beyond a reasonable doubt." *State v. Brokaw*, 342 N.W.2d 864, 865 (Iowa 1984). A flight instruction may be proper even though there is no direct evidence that an accused fled to avoid a criminal charge, and even if an accused admits his or her involvement in the alleged crime, evidence ·that the accused left the scene may be circumstantially relevant to prove both commission of the act and the intent or purpose for which the act was committed. *Id.* Departure from the premises alone right after the crime but before the police arrives has been held to constitute a circumstance indicating flight. *State v. Poyner*, 306 N.W.2d 716, 719 (Iowa 1981); *State v. Galvan*, 181 N.W.2d 147, 152 (Iowa 1970).

In the present case, there is no dispute that Lockheart fled the scene of the crime with Nebinger. The record also reveals that while at Lisa Crafton's home, Lockheart and Nebinger repeatedly mentioned that they needed to get out of town, telephoned several hotels asking about room rates, and called Lockheart's father to ask for money. They were apprehended by the police, however, before they could put their plan into action. We therefore believe that there was ample evidence in the record to support a submission of a flight instruction to the jury.

### IV.

Lockheart additionally argues that the trial court erred in allowing evidence of her unrelated theft of a wallet some four to five hours after the murder. Lockheart contends that under Iowa Rule of Evidence 404(b), proof of the theft was irrelevant and immaterial and was offered only to show Lockheart's bad character.

Pursuant to Iowa Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Such evidence, however, may be admissible to show: (1) proof of motive, (2) opportunity, (3) intent, (4) preparation, (5) plan, (6) knowledge, (7) identity, or (8) absence of mistake. Iowa R.Evid. 404(b). The purpose of this rule is to exclude from the jury's consideration evidence which has no relevancy but is offered to show bad character or that the accused committed the alleged crime. *State v. Conner*, 314 N.W.2d 427, 429 (Iowa 1982). The Iowa Supreme Court has recognized that ·rule 404(b) is inapplicable to evidence of a fact or element in issue, such as evidence showing a common scheme or system of criminal activity embracing the commission of two or more crimes so related that proof of one tends to prove another. *Id.* at 429. Additionally, the Iowa Supreme Court has held that "[w]hen acts are so clearly related in time and place and so intimately connected that they form a continuous transaction, the whole transaction may be shown to complete the story of what happened." *State v. Hood*, 346 N.W.2d 481, 483–84 (Iowa 1984), quoting *State v. Oppelt*, 329 N.W.2d 17, 19 (Iowa 1983).

The record reveals that about four or five hours after the alleged crime, Lockheart, who was at Debbie Nebinger's home, went to the home of a neighbor to use the telephone to call Lisa Crafton and ask her for a ride because the police had been to Debbie's home. While at the neighbor's home, Lockheart stole the neighbor's wallet. The record also reveals that Lockheart was anxious to obtain some money and repeatedly mentioned the necessity of leaving town.

Lockheart admits that the admissibility of such evidence rests within the discretion of the trial court. The trial court, upon hearing all the evidence, decided to allow evidence of the theft into evidence for the limited purpose of showing the whole story

and explaining Lockheart's conduct during the time between the commission of the crime and her arrest. As the Iowa Supreme Court has recognized with an aiding and abetting charge, "participation can be inferred from circumstantial evidence including presence, companionship and conduct before and *after* the offense is committed." *Miles*, 346 N.W.2d at 520 (emphasis supplied). The evidence of the theft could therefore be found relevant for purposes of proving flight and her cooperation with Nebinger in the commission of the crime.

Furthermore, the jury was instructed that this evidence was offered for the limited purpose of showing Lockheart's activities on the day of the crime and was cautioned not to speculate on Lockheart's guilt or innocence of that crime. Only in extreme circumstances will such a cautionary instruction be deemed insufficient to remove the danger of prejudice. *State v. Conner*, 314 N.W.2d 427, 429 (Iowa 1982). This is not such a case. We therefore find no abuse of discretion by the trial court in admitting evidence of the theft.

### V.

Lockheart lastly contends that her constitutional and statutory right to be present at all stages of the trial was violated by the trial court's handling of a jury communication in her absence. During deliberations, the jury sent a note to the court setting forth several questions. This note, however, was not preserved in the record. The trial judge showed the note to counsel for the defense and the State. Both attorneys agreed with the trial judge that the questions asked did not merit a direct response. The trial court then wrote a handwritten note on the bottom of the sheet on which the questions were presented telling the jury he could not answer their questions. The trial judge, in his affidavit, stated that none of the questions were of substance and could have been answered by reading the instructions. Defense counsel, in his affidavit, stated that "we all agreed that the most innocuous thing was to instruct the jury that the jury should review the court's instructions."

Though Iowa Rule of Criminal Procedure 18(5)(g) requires that a defendant be present when a communication is received from the jury concerning a point of law arising in the case or if there is any disagreement as to any part of the testimony, we believe Lockheart has failed to properly preserve this issue on appeal. In order to properly preserve this issue, Lockheart should have raised the issue in the trial and filed a motion for new trial. *State v. Williams*, 341 N.W.2d 748, 751 (Iowa 1983); *State v. McKee*, 312 N.W.2d 907, 915 (Iowa 1981). Lockheart has failed to explain why this issue was not raised on appeal.

Even assuming the issue was properly preserved, we find any error harmless beyond a reasonable doubt. There is no claim that the trial judge's communication was an instruction on the law or that it had any bearing on the evidence the jurors were to consider. *Williams*, 341 N.W.2d at 751. Nor is there any evidence that the communication would have been different if defendant had been present. We find no basis for reversal on this issue.

AFFIRMED.