**Atwell Junior CONNER, Petitioner,**

v.

**DIRECTOR OF DIVISION OF ADULT CORRECTIONS, STATE OF IOWA, Respondent.**

No. C85-0140.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Oct. 14, 1987.

Jon M. Kinnamon, Cedar Rapids, Iowa, for petitioner.

Thomas D. McGrane, Asst. Atty. Gen., Des Moines, Iowa, for respondent.

## ORDER

HANSEN, District Judge.

This matter is before the court on petitioner's application for writ of habeas corpus, filed July 9, 1985. Hearing was held

on petitioner's application on October 30, 1986, when petitioner appeared by his counsel of record, Jon M. Kinnamon, Esq., and respondent appeared by its counsel, Thomas D. McGrane, Esq. The arguments of counsel were made and heard. Further briefs were filed in March, 1987. The court, having reviewed the extensive record in this matter, read the briefs and considered the arguments of counsel, enters the following order.

Atwell Junior Conner seeks habeas corpus relief from a life sentence imposed by an Iowa District Court upon his conviction after a trial by jury for the first-degree murder of Maureen Ann Connolly in Jones County, Iowa.

The facts surrounding this crime were set forth in detail in *State v. Conner*, 241 N.W.2d 447 (Iowa 1976), as follows:

> [The state's] evidence tended to show that in the evening of March 8, 1974, defendant Atwell Junior Conner discussed the possibility of committing a robbery with two friends, George Nowlin and Steve Martin. The trio spent that night in the Cedar Rapids apartment of Mabel Beltz, Nowlin's girlfriend. The next morning they went to defendant's home in a rural area near Cedar Rapids where they picked up a single-shot 20 gauge shotgun. They took the gun back to the Beltz apartment, and Nowlin sawed off the gun barrel. They later test-fired the gun, which they called "short-shortie."

> After an afternoon and evening of drinking and playing pool, defendant ended up with Nowlin at about 10:30 p.m. in Nowlin's car. Martin was not with them. Nowlin had told Beltz he was going to commit a robbery. He had two loaded shotguns in the car, a five-shot pump 20 gauge shotgun and "short-shortie." Defendant had agreed he would use one of the guns if necessary. Near midnight they were proceeding south on highway 218 in Cedar Rapids.

> As they neared the intersection of the highway with Thirty-third Avenue, they saw a boy and girl walking north on the east side of the highway. The youths were Michael Servey and Maureen Ann Connolly, teenagers whose car had run out of gas nearby. Nowlin decided to rob the young couple.

> Nowlin turned his vehicle around at the intersection and headed north. He told defendant to get in the back seat and handed "short-shortie" to him. They pulled alongside the couple. Nowlin ordered Maureen into the passenger side of the front seat and Michael into the left side of the back seat at the point of the pump shotgun. Defendant held the other shotgun on Michael after he entered the car. Nowlin demanded Michael's money. Michael gave his money to defendant who reached forward and put it in Nowlin's shirt pocket.

> Nowlin continued driving north on highway 218 and later turned onto highway 30 and headed east toward Mount Vernon. In Mount Vernon, he turned north on highway 1. At about 1:00 a.m. on March 10 they arrived at a point in rural Jones County on a gravel road near Old Morley Bridge. There Nowlin stopped the car and ordered Maureen to get out with him. Defendant remained in the car with Michael. Nowlin raped Maureen near the car. She attempted to run away, but Nowlin fired his pump shotgun at her, fatally wounding her with two shotgun blasts. He left her body in the ditch by the bridge and got back in the car.

> He ordered defendant to drive the car. At Nowlin's direction defendant drove the vehicle to Palisades Park in Linn County where Nowlin, after locking "short-shortie" in the glove compartment, got out of the car with Michael. He struck Michael with the pump shotgun and then shot and killed him. He left Michael's body there.

> Nowlin and defendant returned to the Beltz apartment in Cedar Rapids, arriving there at some time between 2:00 a.m. and 3:00 a.m. Nowlin had blood on his clothing. He told Beltz he had killed the two teenagers. He later threatened Beltz, Martin and defendant with a similar fate if they should tell the police.

At about 9:00 a.m. Nowlin, Martin and defendant went back to the place Michael had been killed. Defendant drove the car. At the scene of the killing, Nowlin retrieved a piece of the pump shotgun which had fallen off when he struck Michael with it. Defendant remained in the car while Nowlin and Martin removed Michael's billfold from his body. Later Nowlin took 15 cents from the billfold and then threw it in the river. They returned to the Beltz residence and defendant went home.

The following Sunday, March 17, Nowlin, accompanied by defendant and defendant's wife and six children, took the pump shotgun and threw it in the river.

Maureen's body was found in the afternoon of March 16. Medical examination confirmed that she had been raped and died of shotgun wounds. Michael's body was found on March 17.

Martin went to the police on March 18 and reported what he knew of the events surrounding the killings. At about 4:00 a.m. on March 19 officers went to defendant's home and asked defendant to come to the Cedar Rapids police station with them for questioning. Defendant accompanied the officers to the station where he was interrogated about the killings for about one and one-half hours. During that time he orally admitted his participation in the events leading to the deaths of Michael and Maureen, although after receiving advice of counsel he refused to sign a written statement. He was charged with the murder and rape of Maureen in Jones County and the murder and robbery of Michael in Linn County.

*Id.* at 450–51.

Conner's conviction was affirmed by the Supreme Court of Iowa on direct appeal. *Id.* Conner then filed a habeas corpus petition in United States District Court alleging that his state conviction was in violation of the United States Constitution. The district court[1] dismissed Conner's petition, and petitioner appealed. The Eighth Circuit Court of Appeals affirmed the district court on four of the six issues litigat-

ed, and vacated its ruling on two issues which Conner had not fully presented to the Iowa state courts. *Conner v. Auger*, 595 F.2d 407 (8th Cir.), *cert. denied*, 444 U.S. 851, 100 S.Ct. 104, 62 L.Ed.2d 67 (1979). Conner then initiated a postconviction proceeding in Iowa District Court, raising the two issues that the Eighth Circuit Court of Appeals had deemed unexhausted, in addition to other issues. The Iowa District Court denied Conner's application for postconviction relief, and on appeal the Supreme Court of Iowa affirmed. *Conner v. State*, 362 N.W.2d 449 (Iowa 1985). Conner then filed the pending habeas corpus petition, raising the same issues raised in his state postconviction proceeding along with two additional issues which arose from the postconviction opinion of the Supreme Court of Iowa.

After a hearing on the merits of the pending petition, this court asked the parties to brief the issue of the exhaustion of the two claims which arose from the Iowa Supreme Court's postconviction opinion, contained in Counts VIII and IX of the pending petition. The court will address this issue before proceeding to the merits of petitioner's claims.

■ As stated above, the grounds raised by petitioner in this petition for habeas corpus relief are identical to those raised in his state postconviction action, with the exception of Counts VIII and IX of the current petition which state:

*GROUND EIGHT:* JUDICIAL INTERPRETATION: VIOLATION OF DUE PROCESS AND EQUAL PROTECTION.

### ISSUE VIII

THE SUPREME COURT OF IOWA POSTCONVICTION RELIEF DECISION, *CONNER V. STATE*, CONSTITUTED EX POST FACTO, JUDICIAL LEGISLATION AND VIOLATED PETITIONER'S RIGHT TO DUE PROCESS, A JURY TRIAL AND EQUAL PROTECTION. (U.S.C.A., Amendments 5, 14; U.S.C.A., Article I, Section 9, Cl. 3 and Section 10, Cl. 1)

---

1. The Honorable Edward J. McManus, Senior Judge.

THAT THE SUPREME COURT OF IOWA, IN THE POSTCONVICTION RELIEF DECISION OF THE PETITIONER, AND IN THE AFTERMATH OF PETITIONER'S ORIGINAL CRIMINAL TRIAL, MODIFIED AND DELETED ELEMENTS OF THE STATUTORY CRIME OF HOMICIDE UNDER CHAPTERS 690.1 AND 690.2 OF THE 1973 CODE OF IOWA, AND THIS RETROSPECTIVE MOFIDICATION [sic] AND DELETION OF ELEMENTS BY JUDICIAL INTERPRETATION IN A STATE JURISDICTION WHICH HAS ABROGATED THE COMMON LAW, DENIES THE DEFENDANT DUE PROCESS OF LAW AND A TRIAL BY JURY. THE ELEMENTS MODIFIED OR DELETED ARE:

1. MALICE AFORETHOUGHT AND/OR

2. PARTICIPATION IN THE KILLING AND/OR

3. CAUSALITY BETWEEN A SPECIFIC UNDERLYING FELONY AND THE MURDER UPON WHICH FIRST–DEGREE MURDER CRIMINAL LIABILITY IS BASED.

THE POSTCONVICTION RELIEF DECISION UPHOLDS A JURY MARSHALLING INSTRUCTION IN PETITIONER'S ORIGINAL TRIAL WHICH DOES NOT CONTAIN THE THEN REQUISITE ELEMENTS FOR A FIRST–DEGREE MURDER CONVICTION UNDER CHAPTERS 690.1 AND 690.2 OF THE 1973 CODE OF IOWA, AND IN THE ALTERNATIVE, THE POSTCONVICTION RELIEF DECISION RETROSPECTIVELY CREATES A FELONY–MURDER RULE BASED ON VICARIOUS LIABILITY WHICH IS AT VARIANCE WITH THE ELEMENTS OF FELONY MURDER SUBMITTED IN OTHER IOWA CASES UNDER CHAPTER 690.1 AND 690.2 OF THE 1973 CODE OF IOWA AND WHICH IS IN VIOLATION OF EQUAL PROTECTION.

*GROUND NINE:* VARIANCE OF CHARGE FROM PROOF AT TRIAL.

ISSUE IX

THE SUPREME COURT OF IOWA POSTCONVICTION RELIEF DECISION, *CONNER V. STATE,* 362 N.W.2d 449 (Iowa 1985) PERMITTED THE OFFENSE OF MURDER TO BE PROVEN IN A MANNER NOT CHARGED, AND THERE WAS A VARIANCE BETWEEN THE CRIME CHARGED AND PROOF AT TRIAL WHICH PREJUDICED SUBSTANTIAL RIGHTS OF THE PETITIONER.

THE SUPREME COURT OF IOWA, PRIOR TO *CONNER V. STATE,* 362 N.W.2d 449 (Iowa 1985) HELD THAT WHEN A CRIME MAY BE COMMITTED IN DIFFERENT WAYS, AND THE STATE SPECIFIES ONE WAY, THE OFFENSE MUST BE PROVED TO HAVE BEEN COMMITTED IN THE WAY CHARGED. WHERE THERE IS A VARIANCE BETWEEN A CRIME CHARGED AND THE PROOF AT TRIAL, THE SUPREME COURT OF IOWA WILL REQUIRE A NEW TRIAL IF A SUBSTANTIAL RIGHT OF THE DEFENDANT IS PREJUDICED.

WHEREFORE, PETITIONER PRAYS THAT HIS STATE CONVICTION BE SET ASIDE AND THAT HE BE AWARDED A NEW TRIAL AND THAT THE COURT GRANT HIM THAT RELIEF APPROPRIATE FOR THE ISSUES RAISED AND CONSISTENT WITH DUE PROCESS AND DOUBLE JEOPARDY.

Counts VIII and IX clearly attack the postconviction opinion of the Supreme Court of Iowa handed down in *Conner v. State,* 362 N.W.2d 449 (Iowa 1985). Although this court sought and the parties provided briefs on the issue of the exhaustion of those counts, it has become apparent upon further research that this court lacks jurisdiction under 28 U.S.C. § 2254 to hear complaints regarding the propriety of state postconviction relief proceedings. *Williams v. State of Mo.,* 640 F.2d 140, 143–44 (8th Cir.), *cert. denied,* 451 U.S. 990, 101 S.Ct. 2328, 68 L.Ed.2d 849 (1981); *Mitchell v. Wyrick,* 727 F.2d 773, 774 (8th Cir.), *cert. denied,* 469 U.S. 823, 105 S.Ct.

100, 83 L.Ed.2d 45 (1984); *Kirby v. Dutton,* 794 F.2d 245, 247–48 (6th Cir.1986). *But see, Dickerson v. Walsh,* 750 F.2d 150, 152–54 (1st Cir.1984).

In *Mitchell,* the Eighth Circuit Court of Appeals stated:

> Habeas corpus is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, § 2254 gives federal courts jurisdiction to determine the constitutionality of a state criminal conviction, but does not authorize review of state postconviction relief proceedings. "Even where there may be some error in state postconviction proceedings, this would not entitle appellant to federal habeas corpus relief since appellant's claim here represents an attack on a proceeding collateral to detention of appellant and not on the detention itself...." *Williams v. Missouri,* 640 F.2d 140, 144 (8th Cir.), *cert. denied,* 451 U.S. 990, 101 S.Ct. 2328, 68 L.Ed.2d 849 (1981).

*Mitchell v. Wyrick,* 727 F.2d at 774. Similarly here, petitioner's Counts VIII and IX allege error in the state postconviction proceedings, which are collateral to petitioner's detention. Therefore, petitioner's claim that he was denied due process, equal protection and a jury trial as a result of the Supreme Court of Iowa's postconviction relief decision in *Conner v. State* is not cognizable under § 2254. *Williams v. State of Mo.,* 640 F.2d at 143–44; *Mitchell v. Wyrick,* 727 F.2d at 774; *Kirby v. Dutton,* 794 F.2d at 247–48. As a result of this disposition of Counts VIII and IX, it is not necessary to determine whether petitioner exhausted his available state remedies in regard to those counts. *Mitchell,* 727 F.2d at 774, n. 2. Accordingly, Counts VIII and IX of the pending petition shall be dismissed.

Turning now to the remainder of the petition, Conner asserts: (1) that the trial court's instructions failed to adequately present Conner's theory of defense to the jury, and the failure to do so denied him due process, equal protection of the laws, a fair trial and trial by jury; (2) that the state trial court's application of the Iowa felony-murder rule to his case denied him due process by attributing to him malice aforethought and participation in the killing of Maureen Connolly without a jury finding that he possessed such mens rea or participated in the killing; (3) that the trial court omitted two elements of the crime: participation in the murder of Maureen Connolly and malice aforethought; (4) that his rights to due process and equal protection were violated when the trial court failed to instruct the jury on second-degree murder; (5) that his right to due process was violated when the state failed to disclose exculpatory material consisting of a written statement of Nowlin's cellmate relating Nowlin's statements concerning the crime; (6) that he was denied due process and equal protection when no instructions on second-degree murder were given under his open charge of murder, while in other cases involving similarly situated defendants, instructions on second-degree murder were given; and (7) that the evidence was insufficient to support a finding that Conner participated in the killing of Maureen Connolly with malice aforethought. The court finds that these claims have been properly exhausted in the Iowa courts, and that no evidentiary hearing is necessary in this matter.

## I. *Theory of Defense Instruction*

Conner claims that the trial court's instructions failed to adequately present his theory of defense to the jury, and that the failure to do so denied him due process, equal protection, a fair trial and trial by jury. Conner's theory is that the murder of Maureen Connolly by George Nowlin was *Nowlin's* solitary act with an intent separate from the intent of robbery. As a general rule, improper jury instructions do not form a basis for habeas corpus relief. *See, e.g., Williams v. Lockhart,* 736 F.2d 1264, 1267 (8th Cir.1984); *Dietz v. Solem,* 640 F.2d 126, 130 (8th Cir.1981); *Brouillette v. Wood,* 636 F.2d 215, 218 (8th Cir. 1980), *cert. denied,* 450 U.S. 1044, 101 S.Ct. 1766, 68 L.Ed.2d 243 (1981). However, habeas relief is available "when a petitioner

establishes that improper instructions resulted in a 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.' " *Williams v. Lockhart,* 736 F.2d at 1267, *quoting Brouillette v. Wood,* 636 F.2d at 218, *citing DeBerry v. Wolff,* 513 F.2d 1336, 1338–39 (8th Cir.1975) (*quoting Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)). Petitioner's burden in establishing that the allegedly erroneous instructions were sufficiently prejudicial to "support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977). In short, Conner must "show that the alleged error so infected the entire trial that he was deprived of his right to due process." *Williams v. Lockhart,* 736 F.2d at 1267, *citing Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

The trial court instructed the jury, in part, as follows:

### INSTRUCTION NO. 7

The definition of certain terms as used in these Instructions is as follows:

"Malice" is that condition of the mind which prompts one to do a wrongful act intentionally, without legal justification or excuse. It is that state of disposition which shows a heart without regard of human life. Malice may be either express or implied.

"Express malice" is that which is established by proof of spite, hatred or ill will, or by proof of a deliberate or a fixed intent to do injury.

"Implied malice" is that which may be inferred from the acts and conduct of the accused, and the means employed by him in doing the wrongful and injurious act without legal justification or excuse.

"Malice aforethought" is malice previously entertained.

"Perpetration" is the act or process of committing or carrying out a criminal offense.

### INSTRUCTION NO. 8

Whoever kills any human being with malice aforethought, either express or implied, is guilty of murder.

All murder which is committed in the perpetration of a robbery is murder in the first degree.

. . . .

### INSTRUCTION NO. 11

In this case you must either find the defendant guilty of murder in the first degree or find him not guilty. Before the defendant can be found guilty of the crime of murder in the first degree, the State must establish by the evidence beyond a reasonable doubt each and all of the foregoing propositions:

1. That on or about March 10, 1974, in Jones County, Iowa, George Nowlin did unlawfully shoot Maureen Ann Connolly.

2. That Maureen Ann Connolly died as a result of being shot by George Nowlin.

3. That such action of George Nowlin was done by him with malice aforethought.

4. That such action of George Nowlin was committed in the perpetration of a robbery of Michael Servey by defendant and George Nowlin, in which robbery defendant either actively participated or knowingly aided and abetted George Nowlin.

If the State has proved beyond a reasonable doubt each and all of the foregoing propositions, then it will be your duty to find the defendant guilty of murder in the first degree. But if the State has failed to prove any one or more of the foregoing propositions beyond a reasonable doubt, then it will be your duty to find the defendant not guilty.

## INSTRUCTION NO. 12

In connection with paragraph 4 of Instruction No. 11, you are instructed that such action of George Nowlin was committed in the perpetration of a robbery of Michael Servey only if the robbery of Michael Servey and the killing of Maureen Ann Connolly were parts of one continuous series of acts connected with each other.

Conner argues that the jury should have been able to base its verdict upon either of the underlying felonies of rape or kidnapping since "both the killing and the malice aforethought attributable to the principal who perpetrated the murder could have arisen from an underlying felony other than the underlying felony of robbery which formed the basis of petitioner's culpability, absolving petitioner of guilt under the State's felony-murder theory." *Conner v. State*, 362 N.W.2d at 451. In addition, Conner insists that the instructions should have required the jury to find some causal connection between the robbery and the murder in order to convict.

The State asserts that Conner is prevented from presenting part of this claim by the doctrine of procedural default under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). "When a federal habeas petitioner's failure to object is treated by the state court as a procedural default of his claim, the failure is to be scrutinized by the federal court under the cause and prejudice standard, as opposed to the fundamental fairness standard." *Clark v. Wood*, 823 F.2d 1241, 1251 (8th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 334, 98 L.Ed.2d 361 (1987), *citing Wainwright v. Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506.

Clearly, the Supreme Court of Iowa has treated petitioner's conduct as a procedural default of his claim that he is entitled to a theory of defense instruction. In reviewing this claim, the Iowa court stated:

The first problem with Conner's present contention is that of preservation of er-

ror. He did not ask for a theory of defense instruction on the grounds that he now advocates, but bootstraps his present contention by referring to his objection to the marshalling instruction and the definitional instruction. Thus, when we found that the language at issue was not requested as a theory of defense instruction, we determined that error was not preserved.

*Conner v. State*, 362 N.W.2d at 453. Since the Iowa court treated Conner's failure to request a theory of defense instruction as a procedural default of his claim, the failure will be examined under the cause and prejudice standard. *See Wainwright v. Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506.

■ In order to avoid procedural default, Conner must show both cause and prejudice, "for in the absence of such a showing, a defendant who has failed to raise a constitutional claim in state court is procedurally barred from litigating that claim in a federal habeas proceeding." *Leggins v. Lockhart*, 822 F.2d 764 (8th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988); *Engle v. Isaac*, 456 U.S. 107, 110, 102 S.Ct. 1558, 1562, 71 L.Ed. 2d 783 (1982). Conner has not shown cause for his failure to request a theory of defense instruction. The question of cause for procedural default turns not on whether counsel erred, but on "some objective factors external to the defense that impeded counsel's efforts to object." *Clark v. Wood*, 823 F.2d at 1251, *citing Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986). Conner has not made any showing of such cause for his failure to request a theory of defense instruction. Therefore, any claim that the trial court should have given a theory of defense instruction is procedurally barred.

■ It is important to note that although Conner did not request a theory of defense instruction,[2] he did object to the trial court's marshalling instruction and definitional instruction, which are set out above.

2. "A proper theory of defense instruction is one which sets forth a set of facts which would preclude a finding of guilt. *State v. Kase*, 344

N.W.2d 223, 226 (Iowa 1984)." *Conner v. State*, 362 N.W.2d at 453.

In pertinent part, the instructions provided that if the murder of Maureen Connolly "was committed in the perpetration of a robbery of Michael Servey by defendant [Conner] and George Nowlin, in which robbery defendant [Conner] either actively participated or knowingly aided and abetted George Nowlin," then the jury was to find Conner guilty of murder in the first degree. Instruction No. 11. The instructions also provided that " 'perpetration' is the act or process of committing or carrying out a criminal offense," and that "... such action of George Nowlin (the killing of Maureen Ann Connolly with malice aforethought) was committed in the perpetration of a robbery of Michael Servey only if the robbery of Michael Servey and the killing of Maureen Ann Connolly were parts of one continuous series of acts connected with each other." Instructions No. 7, 12. Thus, in order to convict, the jury was required to find that Conner was either an active participant in or an aider and abettor of robbery, and that the murder was committed in the "act or process of committing or carrying out" that robbery.

Under the trial court's instructions, the jury was free to find that the murder of Maureen Ann Connolly was committed in the perpetration of rape, kidnapping or robbery, or any combination thereof. Yet the instructions clearly state that if the State *failed* to prove that the murder was committed in the perpetration of robbery, in which Conner was either an active participant or an aider and abettor, then it was the jury's duty to find Conner not guilty of first-degree murder.

Conner insists that he has been deprived of due process since the instructions failed to set forth his theory that the murder arose from Nowlin's intent, which was separate from the intent of robbery. In light of the instructions given at trial, petitioner's argument is unpersuasive. Conner was free to establish at trial that the murder was not committed in the perpetration of the robbery. The instructions do not impede the jury in its ability to judge the facts in order to determine whether the murder was committed in perpetration of the robbery. Indeed, under the instructions, had the jury been persuaded that the murder was committed in the perpetration of either kidnapping or rape, and not robbery, they would have found Conner not guilty. In short, Conner has failed to show that "the alleged error so infected the entire trial that he was deprived of his right to due process." *Williams v. Lockhart*, 736 F.2d at 1267.

■ Finally, Conner contends that Instruction No. 12 allows the jury to convict if the robbery and the murder are merely temporally connected rather than causally connected. In *Cupp v. Naughten*, 414 U.S. at 146–47, 94 S.Ct. at 400, the Supreme Court examined the role of the habeas court when reviewing state jury instructions and stated:

[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.

* * * *[W]e accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. Boyd v. United States, 271 U.S. 104, 107 [46 S.Ct. 442, 443, 70 L.Ed. 857] (1926). [However] this does not mean that an instruction by itself may never rise to the level of constitutional error.* * * *

* * * [T]he question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the failing instruction by itself so infected the entire trial that the resulting conviction violates due process.

*Id.* 414 U.S. at 146–47, 94 S.Ct. at 400 (emphasis added). Conner insists that "Instruction 12 is so drastically deficient in causal criteria that a due process violation occurred." Petitioner's brief, p. 10.

■ Contrary to Conner's assertion, the instructions, read as a whole, withstand

constitutional scrutiny.[3] In particular, the insertion of the definition of "perpetration" from Instruction No. 7 into Instruction Nos. 8, 11 and 12, makes evident the causative element which Conner claims is lacking. Further, this court is in agreement with the Supreme Court of Iowa that the trial court's instructions embodied the concept urged by Conner at least as well as Conner's proposed language. *State v. Conner*, 241 N.W.2d at 464. Finally, the court finds that Conner's objection and proposed instruction only indirectly refer to his present articulate demand for "causal criteria." An objection to instructions should be specific and should indicate "why the court's instruction is erroneous and what should be done to conform the judgment to the law." *United States v. Phillips*, 522 F.2d 388, 391 (1975). *See also, Johnson v. Houser*, 704 F.2d 1049, 1051 (8th Cir.1983); *United States v. Hecht*, 705 F.2d 976, 978 (8th Cir.1983); *State v. Feddersen*, 230 N.W.2d 510, 515 (Iowa 1975); *State v. Blyth*, 226 N.W.2d 250, 273 (Iowa 1975); Rule 196, Iowa Rules of Civil Procedure. Although the trial court did not have the benefit of petitioner's exhaustive brief in drafting its instructions, the court finds that the instructions given comport with due process. In addition, the court finds that Conner was not deprived of a fair trial, a trial by jury, or equal protection as a result of the instructions given at trial.

## II. *Elements of the Crime*

Conner raises three grounds for habeas corpus relief on the contention that the state failed to prove that he (1) participated in the killing of Maureen Connolly, and (2) did so with the requisite malice aforethought. The grounds raised concerning these issues are petitioner's grounds (2), (3) and (7), as set out above.

■ The State asserts that petitioner is precluded from asserting his claims here by the doctrine of procedural default under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct.

2497, 53 L.Ed.2d 594 (1977). As previously noted, "When a federal habeas petitioner's failure to object is treated by the state court as a procedural default of his claim, the failure is to be scrutinized by the federal court under the cause and prejudice standard, as opposed to a fundamental fairness standard." *Clark v. Wood*, 823 F.2d at 1251.

The Iowa Supreme Court found that Conner failed to object to the instructions in the trial court on the specific grounds upon which he now claims error, and thus did not preserve error on these grounds. *Conner v. State*, 362 N.W.2d at 454–55. Since the Iowa Supreme Court treated petitioner's failure to object to the instructions as a procedural default of these claims, this court will examine the failure under the cause and prejudice standard.

Initially, the court notes that the 1973 Code of Iowa provided for the making of objections to criminal instructions in the following manner. Chapter 780.35 of the Code of Iowa (1973) provided:

> 780.35 **INSTRUCTIONS.** The rules relating to the instructions of juries in civil cases shall be applicable to the trial of criminal prosecutions.

Rule 196 of the Iowa Rules of Civil Procedure, sets out the process of lodging objections to the court's jury instructions as follows:

> **196. Instructions.** The court shall instruct the jury as to the law applicable to all material issues in the case and such instructions shall be in writing, in consecutively numbered paragraphs, and shall be read to the jury without comment or explanation; provided, however, that in actions triable to a jury where the amount in controversy as shown by the pleadings is less than one thousand dollars, and in any action where the parties so agree, the instructions may be oral. At the close of the evidence, or such prior time as the court may reasonably fix, any party may file written requests

---

**3.** This case is distinguishable from *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), in which an element of the crime, intent, was presumed from proof that the criminal act occurred. Under the instructions given here, all elements were required to be found by the jury in order to convict.

that the jury be instructed as set forth in such requests. Before argument to the jury begins, the court shall furnish counsel with a preliminary draft of instructions which it expects to give on all controversial issues, which shall not be part of the record. Before reading them to the jury, the court shall submit to counsel its instructions in their final form, noting this fact of record, and granting reasonable time for counsel to make objections after argument to the jury and before the instructions are read to the jury. *Within such time, all objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal.* But if the court thereafter revises or adds to the instructions, similar specific objection to the revision or addition may be made in the motion for new trial, and if not so made shall be deemed waived. All instructions and objections, except as above provided, shall be part of the record.

Rule 196, I.R.C.P. (1973) (emphasis added). This rule has been implemented in the following straightforward manner by the Supreme Court of Iowa: "Rule 196 directs, in part, all objections to instructions must specify the objectionable matter, on what grounds, and none other will thereafter be considered." *State v. Brandt,* 182 N.W.2d 916, 917–18 (Iowa 1971), *citing State v. Ford,* 259 Iowa 744, 751–52, 145 N.W.2d 638 (Iowa 1966); *State v. Hamilton,* 179 N.W.2d 369, 371 (Iowa 1970); *State v. Brown,* 172 N.W.2d 152, 157–60 (Iowa 1969); *Schall v. Lorenzen,* 166 N.W.2d 795, 797 (Iowa 1969). Further, the Iowa court has reflected upon the purpose of Rule 196 as follows:

The purpose of requiring clarity of objections is not to gratify any possible whim of the trial judge, but to afford the trial judge an opportunity to catch exactly what is in counsel's mind and thereby determine whether the objection possesses merit to an extent the instruction

should be recast. *In short, a party, upon objecting, must make known to the trial judge the specific objection which he may wish to urge upon appeal.*

*State v. Baskin,* 220 N.W.2d 882, 886 (Iowa 1974) (emphasis added). *See also* Robert G. Allbee and Kasey W. Kincaid, *Error Preservation in Civil Litigation: A Primer for the Iowa Practitioner,* 35 Drake L.R. 1, 22–24 (1985–86).

When faced with these same issues in petitioner's state postconviction action, the Supreme Court of Iowa stated:

Initially, we have a question of preservation of error. Conner's claims are based on a contention that section 690.1 requires the State to prove in a murder case that the killing took place and was done with malice aforethought. Instruction 11 only required proof that Nowlin killed with malice aforethought and only required Conner's participation in the robbery. Conner asserts the instruction incorrectly substitutes and attributes Nowlin's action and malice aforethought to Conner on a finding that Conner aided and abetted the robbery. Conner did not raise this objection in the trial court when exceptions were taken to the instruction. He claims he preserved error by referring to his motion for a directed verdict at the close of the State's evidence which was renewed at the end of the evidence. We find this contention is incorrect. The motion for a directed verdict referred to the open charge of murder, requesting that murder in the first degree be removed as an issue on grounds that the indictment was faulty for not specifically alleging the killing was deliberate, willful or premeditated and failing to refer to a specific felony. In the portion of the motion directed at murder in the second degree, he pointed out the insufficiency of the evidence that Conner killed with malice aforethought or that he aided and abetted in second degree murder, but made no claim that Conner could not be held responsible for Nowlin's action due to Conner's participation in the robbery. The trial court

never had the benefit of Conner's present arguments and contentions. Consequently, any claim of error based on objections to the instructions or on a failure to instruct pursuant to a request is without merit; error was not preserved.

*Conner v. State,* 362 N.W.2d at 454–55.

The inquiry the court must now make, as a result of the fact that the state court has treated petitioner's failure to properly object as a bar of these claims, is whether petitioner has shown both cause for and prejudice from said failure. The cause test was recently described by the Supreme Court as follows: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. at 2646. On the record before this court, petitioner disputes the state court's finding of procedural default, but does not make any showing of either cause or prejudice for his failure to properly object at trial.

Although the state court determined that Conner failed to preserve error on these claims, it also reached the merits of these claims. *Conner v. State,* 362 N.W.2d at 455–56. However, upon review of that opinion, this court finds that the state court relied primarily and substantially on petitioner's procedural default in affirming the denial of his application for postconviction relief. Consequently, this court finds that petitioner is not entitled to relief arising from the trial court's instructions, as requested in Conner's grounds for relief numbers (2) and (3).

■ Finally, in regard to Conner's ground for relief number (7), that the evidence was insufficient to support a finding that he participated in the killing of Maureen Connolly with malice aforethought, the court notes that Conner did raise this objection at trial. *Conner v. State,* 362 N.W.2d at 454. However, given the theory of the State's case, that Conner participated in or aided and abetted Nowlin in the robbery of Michael Servey, and that Ms. Connolly was murdered by Nowlin in perpetration of the robbery, the court concludes that Conner's present claim is irrelevant. In short, the state did not proceed at trial on the theory for which Conner claims the evidence is lacking. Nor was it obligated to do so. Under the Iowa felony murder statute, the requisite malice to support the defendant's conviction of first degree murder could exist in Nowlin (as the jury was so instructed it had to find before it could convict Conner), and it could be implied from the circumstances of the underlying felony. *Conner v. State,* 362 N.W.2d at 455. In its discussion of the Iowa statute, the Supreme Court of Iowa said:

Defendant's claim that the felony-murder statute requires he must be proved to have had the mens rea of malice aforethought requires a contorted interpretation of the statute. Under his theory, it would be a rare occasion when a person who has aided and abetted a felony would be convicted of felony-murder. The fact that killing was not within the actual contemplation and intention of one of the parties to the robbery does not relieve such person of the responsibility as long as the other party to the robbery had the necessary mens rea and the act was a consequence of carrying out the unlawful common design.

*Id.* After viewing the evidence, in the light most favorable to the prosecution, it is clear that a rational trier of fact could have found that the essential elements of the Iowa crime of felony murder existed beyond a reasonable doubt in Conner. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Consequently, Conner's ground for relief number (7) shall be denied.

### III. *Second–Degree Murder Instruction*

■ In grounds (4) and (6) of the pending petition, Conner asserts that he was deprived of his rights to due process and equal protection when the trial court failed to instruct the jury on second-degree murder, and that he was denied due process and equal protection because no second-degree murder instruction was given in his

case, while in other cases involving similarly situated defendants, instructions on second-degree murder were given.

The Iowa Supreme Court, on Conner's direct appeal, held that Conner failed to preserve an objection to the lack of a second-degree instruction. *State v. Conner*, 241 N.W.2d at 461. At that time, the court stated, "Defendant's only relevant exception to the court's failure to submit the included offense of second-degree murder was a contention the jury could not make a finding of guilt of first-degree murder because the indictment was insufficient to charge other than second-degree murder." *Id.* The court also held that the trial court did not err in not submitting a second-degree murder instruction. *Id.*

In Conner's initial federal habeas corpus action, the Eighth Circuit Court of Appeals noted the findings of the Iowa Supreme Court, that Conner failed to preserve an objection to the lack of a second-degree instruction, and that the evidence before the trial court did not justify a second-degree instruction. *Conner v. Auger*, 595 F.2d at 411 n. 3. The circuit court also noted that Conner failed to properly present in his petition for writ of habeas corpus a claim that the trial court erred in failing to instruct on lesser included offenses. *Id.*

In Conner's postconviction proceeding, he again raised this claim, and the Supreme Court of Iowa reiterated its earlier holding:

In his subsequent application for postconviction relief, Conner again raises the issue of failure to submit second-degree murder to the jury as an included offense and now claims he was denied equal protection and due process.

. . . .

Initially, we hold that Conner did not preserve error on this claim.

. . . .

Without deciding whether Conner could have asked for an additional theory of liability, we find he did not preserve error by requesting submission of an additional theory.

*Conner v. State*, 362 N.W.2d at 456–57.

In this court, petitioner has argued at length the merits of these grounds for relief, yet he has failed to address the issues of cause and prejudice attendant to the procedural default of his claims, which resulted in the denial of these claims in the Iowa Supreme Court. Consequently, the court finds that petitioner is not entitled to relief as requested in grounds (4) and (6) of his petition. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

## IV. *Exculpatory Evidence*

 Finally, Conner asserts in ground (5) of his petition that the State suppressed exculpatory evidence during his trial, and that his conviction should therefore be vacated. Petitioner asserts that a written statement given to the State by Craig Christopher Sudduth, who was a cellmate with Nowlin in the Linn County jail, contains exculpatory evidence and should have been disclosed to the defense at trial. In particular, the written statement contains the following language: "George Nowlin told me that he was the one that killed the boy and girl and that Atwell Conner was just along at the time ... Nowlin told me that after he killed one of the two victims he pointed the gun at Conner and said he was going to kill him too." (Petitioner's Exhibit 28.)

At trial, Conner's general motion to produce any favorable evidence was sustained. However, it was not until the discovery process commenced in Conner's postconviction action that counsel for Conner first became aware of Sudduth's written statement. (Petitioner's Exhibits 33, 31.) Conner asserts that if the State had complied with his motion to produce, he would have been able to use the signed statement in his defense. Mr. Sudduth was listed in the minutes attached to the Grand Jury Indictment, but was not called as a witness by the State during Conner's trial. Defense counsel interviewed Mr. Sudduth during the trial in order to ascertain whether to call him as a witness and decided not to call him to the stand. Conner's counsel claims that he would have called Sudduth to the stand in order to corroborate Conner's de-

fense and to bolster Conner's credibility had he seen the written statement of Sudduth. (Petitioner's Exhibit 33.) Finally, Conner's counsel claims that the State did not disclose to him an investigator's written summary of an interview with witness Steve Martin, which contains Martin's statement that he observed blood all over the leaves and in the area of Michael Servey's body. *Id.*

The Supreme Court addressed the situation in which alleged error in the suppression of exculpatory evidence warrants a new trial in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The third test outlined in *Agurs* is applicable here since defendant's counsel made the following general request for production of exculpatory material: "At this time the defendant would move for the State to produce any favorable evidence which it may have now discovered as a result of interviews or other information which has come to its attention which may assist the defendant in his defense." (Petitioner's Exhibit 10, *Appendix,* Vol. II, p. 349, Tr. p. 476). The test applicable to this situation is described in *Agurs* as follows:

> Such a finding [of guilt] is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

*Agurs,* 427 U.S. at 112–13, 96 S.Ct. at 2401–02 (footnote omitted).

The court has reviewed the record in order to evaluate the omitted statement in the context of the entire record. The record contains the substance of the omitted statement in the testimony of other witnesses. In particular, Steve Martin testified as to various statements made by Nowlin which implicate Nowlin in the killings. On direct examination, Martin testified:

> Q. And was there any conversation on the—in the car on the way to the park or the way to the Palisades area?
>
> A. Let's see. I can't remember what it was.
>
> Q. Did anyone explain to you why the forearm of the shotgun and the shotgun shell was out there?
>
> A. Yeah. George told me when he hit this guy in the head with the shotgun that the forearm flew off.

(Transcript of testimony of Mr. Martin, p. 105.)

> Q. ... Did you or did Atwell Junior Conner take part in any conversation about what had occurred the night before?
>
> A. That's one thing that I did understand. Junior said over and over again that he didn't think George would do it.

*Id.* at 109.

On cross-examination, Martin testified in part as follows:

> Q. What transpired then? Did a discussion ensue?
>
> A. Well, that's when George came out the living room and he told us what happened, about the two kids.
>
> Q. All right. Now what did he tell you?
>
> A. He said that him and Junior were coming out of a place and that they had robbed or something, and the kids seen them, and George said that he didn't want to go back to the pen, so—
>
> . . . .
>
> Q. All right. What else did he tell you?
>
> A. And so he said that he made the kids get in the car and he took them out.

*Id.* at 141.

> Q. Did George tell you whether or not he killed Maureen Connolly?
>
> A. He didn't say who did it.
>
> Q. Did you ask him?
>
> A. No.

Q. Was there any mention made of a rape at that time?

A. Yes.

. . . .

Q. What did George tell you about this rape?

A. He said that she must have been a virgin and that he hated to kill her.

Q. He said that he hated to kill her?

A. Yeah.

Q. Now I believe you testified earlier in response to Mr. Remley's questions, Steve, that Mr. Conner kept saying over and over, "I didn't think that he would do it. I didn't think that he would do it." Is that correct?

A. That's right.

Q. Was that at or about this time?

A. Yeah.

*Id.* at 142.

Q. And did [George Nowlin] ever tell you that Atwell Conner killed anybody?

A. No.

Q. Did he tell you that he did it? Didn't he take the responsibility for doing these things?

A. Pretty much, yeah.

*Id.* at 146. In view of the testimony of Mr. Martin, the omitted statement of Nowlin's cellmate that Nowlin said that "... he was the one that killed the boy and girl and ... Atwell Conner was just along at the time ..." has diminished value.

It must be borne in mind that the State did not proceed on the theory that Conner killed either Servey or Connolly. Instead, his liability arose from the fact that the killings were committed in the perpetration of a robbery in which he participated or aided and abetted. The omitted statement is merely cumulative to Martin's testimony and is not of sufficient weight to create a reasonable doubt about Conner's guilt.

Likewise, Sudduth's statement that "Nowlin told me that after he killed one of the two victims he pointed the gun at Conner and said he was going to kill him too" does not weaken the foundation of Conner's guilt. Conner testified about this incident at trial. (Transcript of testimony of Atwell Conner, p. 55.) Here too, the omitted statement would have been merely cumulative to other testimony. In spite of the theory that this omitted statement would have corroborated Conner's testimony, it is still insufficient to force a new trial under the *Agurs* test. The same result obtains to the omitted investigator's summary of Martin's statements in which Martin says that he observed blood all over the leaves and in the area of Servey's body. Here too, in the context of the entire record, this statement does not raise a reasonable doubt about Conner's guilt. Since there is no reasonable doubt about Conner's guilt in light of both the record as a whole and the omitted statements, there is no justification for a new trial. *Agurs*, 427 U.S. at 112–13, 96 S.Ct. at 2401–02.

### ORDER

Accordingly, It Is Ordered:

Petitioner Atwell Junior Conner's petition for writ of habeas corpus, filed July 9, 1985, is denied.

Done and Ordered this 14th day of October, 1987.