# IN THE COURT OF APPEALS OF IOWA

No. 23-0408
Filed October 16, 2024

**STATE OF IOWA,**
  Plaintiff-Appellee,

**vs.**

**DAVID JOHN LEHMANN,**
  Defendant-Appellant.
_____

  Appeal from the Iowa District Court for Dubuque County, Monica Ackley, Judge.

  A defendant appeals his conviction and sentence for lascivious acts with a child. **REVERSED AND REMANDED.**

  Raphael M. Scheetz, Cedar Rapids, for appellant.

  Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

  Heard by Tabor, P.J., and Chicchelly and Sandy, JJ.

**CHICCHELLY, Judge.**

David John Lehmann appeals both his conviction and sentence for lascivious acts with a child. He contends that (1) the trial court abused its discretion in its evidentiary rulings, (2) the trial court should have granted a new trial based on alleged prosecutorial misconduct, (3) his constitutional right to be present during the proceedings was violated, (4) the trial court should have granted his motion for judgment of acquittal based on an inconsistent jury verdict, and (5) the trial court abused its discretion when sentencing him. Because the court abused its discretion in admitting prior-bad-acts evidence and Lehmann's right to be present during proceedings was violated, we reverse and remand.

### I.      Background Facts and Proceedings.

Elisha has five children: Isaac and I.G., twins born in 2001; A.G., born in 2003; O.G., born in 2005; and E.G., born in 2008. After her divorce, Elisha and her children lived together in a rental house in Dyersville, Iowa. She started dating David Lehmann, who was also going through his own divorce, and he spent "a lot of the time" with them at the rental.

After approximately two years renting, Elisha purchased a house and moved there with her children. Lehmann moved in sometime after. He offered to buy Elisha's house from her and have her pay him rent because she "was struggling with making the bills and stuff happen." Elisha accepted this offer, and the transaction went through in August 2017.

On Memorial Day 2020, O.G. approached Elisha when she returned home from work. O.G. told Elisha "that [Lehmann] had been touching her inappropriately." During their conversation, A.G. walked into the room and "could

tell something was going on." After some coaxing, Elisha and O.G. explained to A.G. what they were talking about and "that's when [A.G.] disclosed that it had been happening to her, too." Elisha called for E.G. and asked her about her experience with Lehmann, "and [E.G.] disclosed as well that he had been touching her inappropriately." When Elisha asked I.G. the same question, I.G. confirmed that "he'd been doing it to her," too.

Elisha directed her children to go to their maternal grandmother's house while she confronted Lehmann. She reported that he became upset and told her that "he had big hands, and he was very concerned about what other people were going to think and say." Elisha left to join her children at her mother's house shortly after.

In August 2020, Elisha reported the abuse to local law enforcement, who investigated and eventually arrested Lehmann. The State charged Lehmann with eight separate counts: Count I, second-degree sexual abuse; Count II, third-degree sexual abuse; Counts III, V, and VII, lascivious acts with a child; and Counts IV, VI, and VIII, indecent contact with a child. Counts I through IV related to O.G, counts V and VI related to A.G., and counts VII and VIII related to E.G.

The case originally proceeded to trial in August 2022 but ended in a mistrial. The parties jointly moved for the mistrial after a potential juror contaminated the jury pool by making disparaging comments about Lehmann to other jurors. The juror claimed he has known Lehmann for "[thirty] years" and stated it was "no wonder this happened" because Lehmann worked as a custodian at a school. The court granted the joint motion.

Trial was then held in December 2021.  All four daughters testified to similar acts by Lehmann, ranging from him walking around the home displaying an erection to audibly masturbating to molestation.  A.G., in particular, testified that Lehmann began touching her in the Dyersville rental home, before he moved in with the family.  On some mornings, the family would "pile in [Elisha's] bed" and after everyone had left, Lehmann would touch her.  A.G. recalled that on one occasion, Lehmann slid his hand inside of her shorts and touched her vagina.

During the trial, Lehmann called a number of character witnesses to testify in his defense.  He also attempted to offer an exhibit, a Facebook post purporting to show Elisha's bias.  Though most witnesses were allowed to testify, the court excluded both the exhibit and the testimony of Lehmann's ex-wife.  Using his ex-wife's testimony, Lehmann sought to prove his "lack of sexual interest in young girls."  He also wanted to use her testimony to rebut I.G.'s claim that Lehmann would "finger and then play with [her] dirty underwear" by asking his ex-wife whether he had exhibited similar behaviors during their marriage.  The State objected for relevance, and the court sustained the objection, finding her testimony "doesn't necessarily meet the definition" of permissible character evidence.

After a four-day trial, the case was delivered to the jury at 11:50 a.m. on Friday morning.[1]  Because it was so close to the noon hour, the jurors were provided lunch and allowed to take a recess to eat.  While they waited for the lunch

---

[1] Once the case was submitted, Lehmann did move for a mistrial based on the State's rebuttal closing statement.  In it, the State summarized the film *Good Will Hunting*, in which Matt Damon works as a janitor at a college campus.  The State contrasted this with Lehmann, who "could be a janitor anywhere" but "chose to be a janitor at a high school," presumably to groom young girls.  The court denied Lehmann's motion for being untimely.

order to arrive, the jury began deliberations. But by 1:52 p.m., the jury sent a written question to the court, asking if they should continue deliberation because there were "two jurors that are in disagreement" and "are not going to change [their] minds." The court responded, "Please continue to discuss the facts and laws." At 3:15 p.m., the jury sent another communication: "We are at a definite impasse [*sic*]. We have exhausted the facts" and "nothing is changing." The court responded again, offering "two options: keep deliberating or take a recess and return Monday when you are more fresh." The jury chose to continue deliberations. On Monday, at 9:46 a.m., the jury asked a third, substantive question which is not at issue on appeal. The court then notified the parties about all three of the jurors' written communications. After a discussion on the record, the parties stipulated to a response to the third question and urged the jury to keep deliberating on all counts. As for the previous two questions, Lehmann's counsel raised concerns about the court's interactions with the jury outside of Lehmann's presence but did not make a definitive motion at that time.

Twenty minutes after the court delivered the instruction, the jury came back with its verdict. In it, the jury acquitted Lehmann of all charges except count V, lascivious acts with a child, which involved A.G. as the victim. Lehmann moved in arrest of judgment and for a new trial, but the court denied both. He also completed a presentence investigation report, which recommended a suspended sentence. Instead, the court followed the State's recommendation and sentenced Lehmann to an indeterminate term of incarceration not to exceed ten years, the maximum allowed by statute. *See* Iowa Code §§ 709.8(2)(a) (2016) (designating lascivious

acts with a child as a class "C" felony); 902.9(1)(d) (permitting incarceration "for no more than ten years" for a class "C" felony).

Lehmann appeals, challenging the court's evidentiary and posttrial rulings. He further contends the trial court abused its discretion when sentencing and that his constitutional right to be present was violated.[2]

## II. Admission of Prior Bad Acts Evidence.

Lehmann moved in limine to exclude I.G.'s testimony. In response, the State argued her testimony would be used "to corroborate details of the statements of other witnesses" and because I.G. is "the most sexually mature child," she is therefore in the best position "to demonstrate intent, motive, and lack of mistake by [Lehmann]." The court allowed I.G. "to testify regarding the same or similar actions perpetrated on her as to" the alleged victims. On appeal, Lehmann contends the court abused its discretion by admitting I.G.'s testimony, claiming its only purpose was to show propensity because she was not one of the alleged victims. Iowa courts are generally not permitted to admit evidence "to prove that on a particular occasion the person acted in accordance with" a specified character trait. Iowa R. Evid. 5.404(b)(1). But prior bad acts are admissible if offered for a non-propensity purpose, such as motive, intent, or lack of mistake or accident. *State v. Cox*, 781 N.W.2d 757, 760–61 (Iowa 2010) (finding that prior-bad-acts evidence is admissible if "relevant and material to a *legitimate* issue in the case other than a general propensity"); Iowa R. Evid. 5.404(b)(2).

---

[2] Because we find reason to reverse on other grounds, we do not reach the merits of his multiple evidentiary, prosecutorial-misconduct, inconsistent-verdict, or sentencing challenges.

To prevail, the State was required to demonstrate sexual intent. *See* Iowa Code § 709.8(1)(a), 709.12(1)(a) (requiring a defendant to act "for the purpose of arousing or satisfying the sexual desires of either [the defender or victim]"). The court found I.G.'s testimony admissible because Lehmann's "pattern of conduct" indicated such intent. *See Cox*, 781 N.W.2d at 771 (noting that evidence "may be relevant to demonstrate motive or intent when a defendant claims touching was accidental" and "admitted evidence of the defendant's previous sexual activities with adolescents to support a charge of assault with intent to commit sexual abuse"). But upon our own review, we disagree. "[T]he elements of a charged offense do not automatically become legitimate, disputed factual issues in a case." *State v. Thoren*, 970 N.W.2d 611, 629 (Iowa 2022). Intent here was not actually at issue because Lehmann's defense at trial was not accident or lack of intent. Instead, Lehmann "flat-out denied ever [inappropriately touching]" the girls. *Id.* at 631. Therefore, I.G.'s testimony could not be used to refute Lehmann's defense.

Similarly, her testimony does little to establish motive or identity, neither of which were in dispute. While the State loosely claimed I.G.'s testimony would demonstrate "motive," it provided no additional basis. "The motive for [sexual crimes] is obviously and inherently sexual," so evidence of prior inappropriate behavior cannot be used as a "generalized motive." *Id.* at 628 (cleaned up) (citation omitted). Further, while the court admitted the testimony based on a "pattern of conduct," evidence of modus operandi is generally only used to establish identity. *See Cox*, 781 N.W.2d at 770; *Thoren*, 970 N.W.2d at 631. Lehmann did not argue mistaken identity or that the crime was committed by

another. Again, he denied the allegations. We therefore cannot find that the testimony was admissible for any purpose other than propensity.

Even if all or a portion of I.G.'s testimony was improperly admitted, we must also consider the potential prejudice to Lehmann by its admission. *See Cox*, 781 N.W.2d at 771 (considering "whether the error was harmless" as part of prior-bad-acts-evidence analysis). In considering the impact to the defendant, "[w]e presume prejudice and reverse unless the record affirmatively establishes otherwise." *Thoren*, 970 N.W.2d at 637 (cleaned up) (citation omitted). Upon our review, we find no such affirmative showing of nonprejudice. In fact, the record supports the opposite: Lehmann was likely prejudiced by the admission of the prior-bad-acts evidence. At trial, I.G. testified that on a weekly basis, Lehmann would make her feel "uncomfortable" and "disgusted." He would "brush past [her]" "with an erection on [her] back side." She also described the way he would "finger and then play with [her] dirty underwear" or "make comments about seeing [her] naked." Her testimony referred to multiple instances and types of prior bad acts in stark detail. *See Cox*, 971 N.W.2d at 771 (considering the "large number and variety" of prior bad acts as finding in favor of prejudice). Further, while the State argues that evidence of Lehmann's guilt was overwhelming enough to justify any alleged error, *see State v. Sullivan*, 679 N.W.2d 19, 31 (Iowa 2004) (considering whether the evidence was "so overwhelming that the State would have prevailed" despite the evidence's exclusion), we disagree. Lehmann was acquitted on seven out of eight charges with a nearly-stalled jury. Accordingly, we must reverse Lehmann's conviction and remand for a new trial.

### III.     Alleged Violation of Right to Be Present.

Lehmann then contends that his constitutional right to be present was violated.  *See State v. Wise*, 472 N.W.2d 278, 279 (Iowa 1991) (recognizing "a constitutional . . . right to be personally present at every stage of trial").[3]  "Barring exceptional circumstances, a criminal defendant should be personally present at every stage of trial, *including any conversation held by the judge and the attorneys with one or more of the jurors*."  *Id.* (emphasis added); *see also State v. Shorter*, 893 N.W.2d 65, 83 (Iowa 2017) ("Under our caselaw, there is no discretion regarding the presence of defendant and counsel."), *but see State v. Blackwell*, 238 N.W.2d 131, 137 (Iowa 1976) (allowing prejudice presumption to be rebutted). While the court's instructions to the jury "to continue" deliberations may seem innocent, we have previously found error for "the most innocuous" of responses. *State v. Lockheart*, 410 N.W.2d 688, 697 (Iowa 1987); *see also State v. Griffin*, 323 N.W.2d 198, 201 (Iowa 1982) (granting a defendant's motion for new trial after court directed jury to reread its instructions).  Violation of this right requires reversal "unless the error is harmless."  *State v. McKee*, 312 N.W.2d 907, 915 (Iowa 1981). The State did not meet its burden in establishing that Lehmann was not prejudiced by the communications; in fact, it made no argument at all.  *See State v. Peterson*,

---

[3] Lehmann also argues that the court applied an incorrect legal standard when ruling on his motion for a new trial.  In its ruling, the court relied on *Atwood* in denying his motion because Lehmann failed to establish he was prejudiced by the judge-jury communications.  *See State v. Atwood*, 602 N.W.2d 775, 778 (Iowa 1999) ("[T]he party seeking to overturn the verdict must show that the misconduct was calculated to, and with reasonable probability did, influence the verdict." (cleaned up) (citation omitted)).  But the ruling in *Atwood* is in the context of the jury having access to "extraneous material" "outside of the record," not judge-jury communications outside the presence of the defendant.  *Id.*

663 N.W.2d 417, 431 (Iowa 2003) (placing the burden of establishing prejudice on the State); *State v. Snyder*, 223 N.W.2d 217, 222 (Iowa 1974) (requiring "the State to show defendant had not been prejudiced"). We therefore reverse Lehmann's conviction and remand. *Snyder*, 223 N.W.2d at 222 (finding "failure of trial court to afford defendant the opportunity to be present . . . was error and necessitates reversal").

## IV.    Disposition.

Because the court abused its discretion by admitting prior-bad-acts evidence and Lehmann's constitutional right to be present was violated, we reverse and remand consistent with this opinion.

**REVERSED AND REMANDED.**